## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WESTMINSTER AMERICAN INSURANCE
COMPANY and ARGENIS REYES and
ROSALBA MUNOZ, h/w, as assignees of 4207
CHESTER AVE, LLC and WALDY REYES,

      Plaintiffs,

      v.

SECURITY NATIONAL INSURANCE
COMPANY,

      Defendant.

Civil Action No.: 2:20-cv-02195

**SECOND AMENDED COMPLAINT
FOR DECLARATORY
JUDGMENT**

**JURY TRIAL DEMANDED**

Plaintiffs, Westminster American Insurance Company ("Westminster"), Argenis Reyes

("Argenis") and Rosalba Munoz ("Munoz"), as assignees of 4207 Chester Ave., LLC ("Chester

Ave.") and Waldy Reyes ("Waldy") (hereinafter referred to collectively as "Plaintiffs"), by and

through their undersigned counsel, come now before this Honorable Court and file this Second

Amended Complaint for Declaratory Judgment, Bad Faith, and Breach of Contract against

Defendant, Security National Insurance Company ("Security National" or "Defendant"), and in

support thereof aver as follows:

### I.    NATURE OF THE ACTION

1.    This is an insurance coverage, breach of contract, and bad faith action premised on

Defendant's repeated breach of its duties to investigate, to defend and indemnify its insureds and

additional insured, and to settle the underlying claims at or within available policy limits.

2.    Plaintiffs seek a determination that Defendant had a duty to defend and indemnify

Chester Ave. as an additional insured under a Commercial General Liability insurance policy

issued to Defendant's named insured, AM Marlin Construction, LLC ("AM Marlin"). Chester

Ave. sought coverage as an additional insured under AM Marlin's Policy for claims asserted against it by Argenis Reyes and Rosalba Munoz, h/w, and Waldy Reyes (collectively, "Underlying Claimants") in relation to the June 25, 2019 collapse of a fire escape at Chester Ave.'s property located at 4207 Chester Avenue, Philadelphia, PA 19104 (hereinafter referred to as the "Underlying Incident").

3.    More than five months after receiving notice of the Underlying Claimants' claims, and without conducting a proper investigation, Defendant took the unsupported position that Chester Ave. was not entitled to additional insured coverage under the AM Marlin Policy because the Underlying Claimants' claims purportedly did not arise from AM Marlin's ongoing operations conducted on Chester Ave.'s behalf.

4.    In taking this position, Defendant breached its duty of good faith and fair dealing, its contractual obligations, and acted in bad faith toward its insureds, additional insureds, and the Underlying Claimants.

5.    Plaintiffs also seek a declaration that Defendant breached its duty to settle the claims arising out of the Underlying Incident. Despite being provided multiple opportunities to do so, Defendant refused to reconsider its position, declined to engage in settlement negotiations, and failed to participate in a mediation attended by all other interested parties.

6.    At the conclusion of mediation, Underlying Claimants' claims were globally resolved for $35 million dollars. As partial consideration for the release and dismissal of Argenis's and Munoz's claims against them, Chester Ave. and Waldy agreed to assign to Argenis and Munoz all claims they would have had against Defendant for failing to honor its defense and indemnification obligations and refusing to participate in mediation discussions, which resulted in

a fair and reasonable settlement. Plaintiffs now seek to be recompensed for Defendant's breach of its contractual, statutory, and common law duties.

7.      Plaintiffs further seek a determination that Defendant was the primary insurer as it relates to coverage for the Underlying Incident. As a result of Defendant's failure to defend and indemnify Chester Ave. and its wholesale refusal to attend the mediation on behalf of its named insureds and additional insureds, Defendant breached the duty of good faith and fair dealing it owed to Plaintiff Westminster, the excess insurer for claims asserted against Chester Ave.. Defendant's position in denying coverage to Westminster's insured was taken in bad faith given the information that was at Defendant's disposal – information which clearly demonstrated that the value of the underlying claims far exceeded AM Marlin's $1 million policy limit. Defendant had numerous opportunities to resolve these claims within the policy limits available to its insureds and additional insureds and refused to do so.

8.      Accordingly, Plaintiffs request that this Court issue a declaration in its favor finding that Defendant is required to indemnify Chester Ave. and Waldy under AM Marlin's Policy for Underlying Claimants' claims and that, in denying coverage for such claims, Defendant not only breached its contractual duties owed to Plaintiffs, but also acted in bad faith pursuant to Pennsylvania's bad faith statute, 42 Pa.C.S.A. § 8371, as well as under Pennsylvania common law principles. Plaintiffs are therefore entitled not only to declaratory relief as described more particularly herein, but also compensatory, statutory, and punitive damages in an amount in excess of $142 million dollars.

## II.    THE PARTIES

9.      Plaintiff, Westminster American Insurance Company is a Maryland corportation with corporate offices at 8890 McDonogh Road, Suite 310, Owings Mills, MD 21117. Westminster regularly conducts business within the Commonwealth of Pennsylvania and within this judicial district.

10.     Plaintiff-assignor, Chester Ave. is a Pennsylvania limited liability company with offices at 222 Righters Mill Road, Penn Valley, PA 19072. Chester Ave. regularly conducts business within the Commonwealth of Pennsylvania and within this judicial district. As described more particularly herein, Chester Ave. has assigned its claims against Defendant to Argenis Reyes and Rosalba Munoz, h/w.

11.     Plaintiff-assignor, Waldy Reyes, is an adult individual residing at 553 West Loudon Street, Philadelphia, PA 19120. At the time of the Underlying Incident, Waldy was an employee of Defendant's named insured, AM Marlin. As described more particularly herein, Waldy has assigned his claims against Defendant to Argenis Reyes and Rosalba Munoz, h/w.

12.     Plaintiff-assignees, Argenis Reyes and Rosalba Munoz, h/w, are adult individuals residing at 1508 Howell Street, Philadelphia, PA 19149.

13.     Defendant, Security National Insurance Company is a Delaware corporation with corporate offices at 800 Superior Avenue East, 21st Floor, Cleveland, OH 44114 and 12790 Merit Drive Suite 200 Dallas, TX 75251. Security National regularly conducts business within the Commonwealth of Pennsylvania and within this judicial district.

## III.    JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

15.     A justiciable controversy exists between Plaintiffs and Defendant within the meaning of 28 U.S.C. § 2201 with respect to Defendant's duty to defend and/or indemnify Chester Ave. and/or Waldy against any claims asserted by Underlying Claimants, in connection with the Underlying Incident. See, e.g., ACandS, Inc. v. Aetna Casualty & Surety Co., 666 F.2d 819, 822-23 (3d Cir. 1981) (finding claims seeking declaration on defendant's duty to defend underlying lawsuit and to pay any judgment resulting from same was ripe for declaratory judgment by court); Yellowbird Bus Co. v. Lexington Ins. Co., 2010 U.S. Dist. LEXIS 69554 (E.D. Pa. 2010) ("in the context of a declaratory judgment action, courts generally find that the issue of whether an insurer has a duty to defend an insured in an underlying action is sufficiently ripe" for judicial determination).

16.     This Court has diversity jurisdiction over this action pursuant to 23 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and this action is between citizens of different states.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as the events and/or omissions giving rise to Underlying Claimants' claims occurred in this judicial district and Defendant regularly conducts business within this judicial district.

## IV.     FACTS GIVING RISE TO THIS INSURANCE COVERAGE DISPUTE

### The Underlying Incident and Settlement of Claims

18.     On or about June 25, 2019, Underlying Claimants Argenis and Waldy were performing repair and/or maintenance work to the interior of Chester Ave.'s property located at 4207 Chester Avenue, Philadelphia, PA 19104 ("the Property"). See Underlying Claimants Argenis and Munoz's Demand Package attached hereto as **Exhibit A**.

19.     At the time of the Underlying Incident, Underlying Claimants were working in their capacity as employees of AM Marlin and/or Altman Management Company, Inc. ("Altman"), a property management company retained by Chester Ave. to maintain and manage the Property.

20.     Underlying Claimants allege that they were injured while discarding construction debris from one of the Property's third-floor fire escape balconies. When they stepped onto the balcony, it collapsed. See Underlying Claimants Argenis and Munoz's Mediation Statement Letter, attached hereto as **Exhibit B**.[1]

21.     Waldy Reyes fell one story onto a second-floor landing, suffering two fractured ribs. Waldy Reyes made a settlement demand of an undisclosed amount in an effort to resolve any claim he may have had in connection with the Underlying Incident.

22.     Argenis Reyes fell multiple stories to the ground and suffered significant injuries, including but not limited to permanent paralysis. In addition to the devastating physical injuries sustained by Argenis, his wife Rosalba Munoz has suffered and will continued to suffer from the life-long impact of Argenis's injuries on their family and marriage. Therefore, Argenis and Munoz claimed they would seek damages at trial in an amount in excess of $35 million dollars and demanded payment of all available policy limits from Chester Ave. and Waldy.

23.     Underlying Claimants alleged Chester Ave. was responsible for their injuries because Chester Ave. is the owner of the property where the loss occurred. Additionally, Argenis alleged that AM Marlin and Waldy (as AM Marlin's employee) were responsible for Argenis's injuries and Munoz's corresponding loss of consortium claims. Finally, Waldy alleged that Altman and Argenis (as Altman's employee) and Chester Ave. were responsible for Waldy's injuries.

---

[1] Argenis and Munoz's counsel has authorized the production of his clients' Mediation Statement—which would otherwise remain confidential pursuant to 42 Pa.C.S. § 5949. See **Exhibit C.**

24.    In an effort to avoid litigation of claims which were clearly covered and whose value far exceeded the available policy limits, all interested parties—except for Defendant and its named insured, AM Marlin—attended a pre-suit mediation on May 13, 2020 before the Honorable Annette Rizzo.

25.    At the conclusion of the mediation, the parties agreed to resolve Underlying Claimants' claims for over $35 million dollars. See Release of Argenis Reyes and Rosalba Munoz, attached hereto as **Exhibit D**; Release of Waldy Reyes, attached hereto as **Exhibit E**. The material terms of these Releases can be summarized as follows:

        a.    Argenis and Munoz released their claims against Chester Ave. in exchange for $30 million dollars, partial satisfaction of which was accepted through receipt of $5.4 million dollars payable under Chester Ave.'s primary ($1 million-dollar limit) and excess ($5 million-dollar limit) insurance policies with Westminster;

        b.    In order to achieve full satisfaction of the settlement, Chester Ave. also agreed to assign its rights to Argenis and Munoz to assert any claims it may have against Defendant Security National for failing to provide coverage to Chester Ave. as an additional insured;

        c.    Argenis and Munoz released their claims against Waldy in exchange $5 million dollars, to be satisfied by Waldy through an assignment of Waldy's rights to assert claims against Defendant Security National for failing to defend and indemnify Waldy as an employee of Defendant's named insured, AM Marlin; and

7

    d.   Waldy released his claims against Chester Ave. and Altman in exchange for a confidential figure which the parties agreed was a fair and reasonable valuation of his claims.

**<u>Chester Ave. As an Additional Insured on AM Marlin's Insurance Policy</u>**

26.    At the time of the Underlying Incident, AM Marlin was insured under Security National Commercial General Liability Insurance Policy, No. NA1175467-02. <u>See</u> AM Marlin's Commercial General Liability Insurance Policy, attached hereto as **Exhibit F**.

27.    Included in AM Marlin's Policy was a "Blanket Additional Insureds-Owners, Lessees or Contractors" Endorsement ("the Blanket Additional Insured Endorsement") that modified the Policy's definition of "Who is an Insured" to include "the person or organization shown in the Schedule, but only to the extent that the person or organization shown in the Schedule is held liable for your acts or omissions arising out of your ongoing operations performed for that insured." <u>See</u> Blanket Additional Insured Endorsement attached hereto as **Exhibit G**.

28.    As explained at length below, Plaintiffs and Defendant agree that, through this endorsement, effective at the time of the Underlying Incident, AM Marlin explicitly designated Chester Ave. as a person or organization to whom additional insured coverage under its Policy was to be extended for liability arising from AM Marlin's "Residential Remodeling" work at "various locations throughout Philadelphia, PA." <u>See</u> **Exhibit F** at 3 (describing AM Marlin's insured business as "Residential Remodeling") and **Exhibit G**.

29.    Plaintiffs and Defendant further agree that this designation requires Defendant to extend coverage to Chester Ave. for any liability imposed upon Chester Ave. which arises out of AM Marlin's ongoing operations performed on Chester Ave.'s behalf.

30.     As the Underlying Incident allegedly arose out of AM Marlin's residential remodeling and repair work to the interior of Chester Ave.'s Property, Plaintiffs aver this Endorsement applies to extend additional insured coverage to Chester Ave. under the AM Marlin Policy.

31.     There is no exclusion within the AM Marlin Policy that would apply to otherwise vitiate or limit the additional insured coverage provided to Chester Ave. under this Endorsement for the claims asserted against it.

## **Waldy Reyes was an Insured on AM Marlin's Insurance Policy**

32.     At the time of the Underlying Incident, Waldy Reyes was an employee of AM Marlin.

33.     At the time of the Underlying Incident, Waldy Reyes was in the process of completing maintenance and/or interior remodeling work at the Property.

34.     AM Marlin's liability policy with Security National specifically states that employees are considered to be insureds "but only for acts within the scope of their employment by [AM Marlin] or while performing duties related to the conduct of your business."

35.     Because Waldy was acting within the scope of his employment with AM Marlin, *and* was performing duties related to the conduct of its business at the time of the Underlying Incident, Waldy was an insured under the Security National Policy for purposes of the Underlying Incident.

## **Security National's Role as the Primary Insurer Relative to Argenis's and Munoz's Claims**

36.     AM Marlin's liability policy with Defendant contained an "Amendment to Other Insurance Condition" stating "[t]his insurance is primary except when below [Excess Insurance Provisions] applies." See Other Insurance Endorsement to AM Marlin's Security National Policy,

9

attached hereto as **Exhibit H**. None of the prerequisites for these "Excess Insurance" provisions apply to this claim. Id. Therefore, AM Marlin's Security National Policy was the first primary layer of coverage for purposes of this tragic accident.

37.     The "Insurance Under More Than one Policy" Conditions found in Chester Ave.'s liability policy with Westminster provided that "Insurance under this Commercial Liability Coverage is primary except as provided under 2.c. below, or unless otherwise stated." See Chester Ave.'s Liability Policy with Westminster attached, in relevant part only, as **Exhibit I** at ¶ 2.a.

38.     Unlike the Security National Policy, Chester Ave.'s Westminster Policy contained excess insurance provisions *which were triggered* by virtue of the Blanket Additional Insured Endorsement on AM Marlin's policy with Defendant. More specifically, the Westminster Policy provided that "this Commercial Liability Coverage is excess over any other insurance...if the other insurance is primary insurance and is available to [Chester Ave.] to cover liability arising out of premises or operations...for which [Chester Ave. has] been added as an additional insured by endorsement to the policy." Id. ¶ 2.c(3).

39.     Chester Ave. was scheduled as an additional insured by the Blanket Additional Insured Endorsement, which provided coverage "to the extent that the person or organization shown in the Schedule is held liable for your acts or omissions arising out of your ongoing operations performed for that insured" at "Various Locations Throughout Philadelphia, PA." See **Exhibit G**. Therefore, the Blanket Additional Insured Endorsement specifically covered liability arising out of AM Marlin's work at the Property.

40.     Therefore, because Chester Ave. was "added as an additional insured by endorsement" to AM Marlin's Policy with Security National, which covered liability arising out of the AM Marlin's work at the Property, Defendant was the primary insurer for Underlying

10

Claimants Argenis's and Munoz's claim, and Westminster was the excess insurer for Argenis's and Munoz's claims against Chester Ave and AM Marlin. Accordingly, Security National owed a duty of good faith and fair dealing to Westminster in the handling of Argenis's and Munoz's claims.

### Security National's Bad Faith Handling of Westminster/Chester Ave.'s Tender

41.     Westminster—Chester Ave.'s commercial general liability insurer—tendered Chester Ave.'s defense and indemnity with respect to Underlying Claimants' claims to Security National. See Westminster's Tender Letter to Security National dated **December 26, 2019**, attached hereto as **Exhibit J**.

42.     On January 2, 2020, Sean Arteca—Security National's Claim Consultant—confirmed receipt of Westminster's tender letter, gave notice of its intent to commence an investigation, and requested additional information regarding the Underlying Incident. See Email from Sean Arteca, attached hereto as **Exhibit K**.

43.     On January 8, 2020, Plaintiffs responded to Security National's request, providing the additional information which had been requested. See Westminster's Letter to Sean Arteca, attached hereto as **Exhibit L**.

44.     On January 15, 2020, another Claim Consultant—Shannon Corley—sent an email to Westminster, lodging another request for additional information and again representing that Security National had begun investigating Plaintiffs' claim. See Email from the handling Claims Consultant, Shannon Corley, attached hereto as **Exhibit M**. Ms. Corley further advised that Security National "ha[d] identified coverage issues which may limit or preclude coverage for the claim under [AM Marlin's] policy." Ms. Corley failed to provide any additional information about what these alleged coverage issues were. Id.

11

45.     On February 7, 2020, Plaintiffs further responded to Ms. Corley's requests for additional information, providing not only additional substantive information but also various documents in support of its original December 26, 2019 tender. See Email from Westminster to Ms. Corley, attached hereto as **Exhibit N**.

46.     Security National never responded to this letter. Despite promises made in its January 2, 2020 and January 15, 2020 emails, Security National never took any steps to formalize and communicate its position regarding Plaintiffs' claim for coverage. Security National did not issue a reservation of rights or declination letter to Plaintiffs Westminster or Chester Ave. explaining what coverage issues might limit or preclude coverage under AM Marlin's policy.

47.     Accordingly, on April 3, 2020, Counsel for Westminster sent additional correspondence to Security's Claim Consultants requesting a formal response to Westminster's December 26, 2019 tender letter. See Counsel's Letter to Mr. Arteca and Ms. Corley, attached hereto as **Exhibit O**. As Westminster's Counsel noted in that correspondence, Security National's refusal to respond to Plaintiffs' coverage claim was affirmatively impeding Plaintiffs' ability to settle Underlying Claimants' claims against Chester Ave. Id.

48.     As part of his April 3, 2020 letter, Westminster's Counsel disclosed Argenis and Munoz's demand package to Ms. Corley and Mr. Arteca so they could be fully informed about the nature of those claims and the extent of the alleged damages. See **Exhibit O**. Counsel asked that Defendant reconsider its coverage position upon review of the materials contained in the demand package.

49.     While Defendant eventually responded to this letter, it yet again failed to squarely address the substance of Underlying Claimants' allegations and/or Chester Ave.'s right to coverage under AM Marlin's Policy. Instead, on April 29, 2020, Defendant reiterated without further

12

explanation that Security National "ha[d] identified coverage issues which may preclude coverage for the claim under the [AM Marlin] policy." See Email from Ms. Corley dated April 29, 2020, attached hereto as **Exhibit P**.

50.     Finally, on May 6, 2020, Defendant provided Plaintiffs with its formal coverage position. See Ms. Corley's May 6, 2020 coverage declination letter on behalf of Security National, attached hereto as **Exhibit Q**.

51.     Ms. Corley's coverage declination letter on behalf of Security National was sent over four months after Defendant's original tender, and just seven (7) days before pre-suit mediation was scheduled to take place on Underlying Claimants' claims. See Email from JAMS mediation confirming May 13, 2020 mediation, attached hereto as **Exhibit R**.

52.     By way of Ms. Corley's May 6, 2020 letter, Security National affirmatively acknowledged that Chester Ave. qualifies as an additional insured pursuant to the Blanket Additional Insured Endorsement. See **Exhibit Q**.

53.     However, Security National alleged such coverage is limited to the extent Chester Ave. is held liable for AM Marlin's acts and/or omissions arising out of AM Marlin's ongoing operations performed for Chester Ave. Id.

54.     Security National denied Chester Ave. coverage for the Underlying Incident because it allegedly determined, through its "investigation," that AM Marlin did not perform any work for Chester Ave. on the Property's fire escape balcony that collapsed. Instead, Security National (incorrectly) maintained that Chester Ave.'s claimed additional insured status was not triggered because AM Marlin's work was limited to work inside the Property.

55.     The wanton and reckless nature of Security National's denial is evidenced on the face of the denial letter itself. Ms. Corley included in this letter a woefully inaccurate depiction of

13

the Blanket Additional Insured Endorsement contained in the AM Marlin policy. Ms. Corley's letter referred to the wrong policy number ("NA114316802" instead of "NA1175467-02"), the wrong policyholder ("D&D Property Services, LLC" instead of "AM Marlin Construction, LLC"), and the wrong effective date of the endorsement ("12/16/17, 12:01 a.m." instead of "12/19/18, 12:01 a.m."). Compare **Exhibit G** at 1 with **Exhibit Q** at 2. Additionally, Ms. Corley's depiction of the Additional Insured Endorsement omitted any reference to the scheduled location ("Various locations throughout Philadelphia, PA") and was not countersigned by any authorized representative of Defendant. Compare **Exhibit G** at 1; with **Exhibit Q** at 2–3. This "cut and paste" boilerplate letter – which improperly denied Chester Ave. coverage as an additional insured – makes clear Defendant did not independently assess whether this endorsement provided coverage for these claims.

56.     Furthermore, in taking this position, Defendant wholly disregarded Underlying Claimants' claim that they were still in the process of performing maintenance on the Property when the fire escape balcony collapsed.

57.     Indeed, Reyes and Munoz's engineering liability expert, Tim Sass, LEED, PE, specifically stated Argenis and Waldy accessed the fire escape balcony "[d]uring their work efforts," and opined that both Altman and AM Marlin failed to ensure the safety of workers by allowing them to access the third floor fire escape balcony. See **Exhibit A**. Security National was provided with a copy of this report as part of the aforementioned April 3, 2020 letter. See **Exhibit O**. Therefore, at the time Security National concluded there was no coverage for the Underlying Accident, Security National was already on notice of the allegation that Argenis was injured while he was performing maintenance duties with AM Marlin's employee (Waldy) at the Property.

58.     Similarly, Ms. Corley was copied on the mediation statement provided by Counsel for Argenis and Munoz to Judge Rizzo, which contained allegations that were apparently ignored by Defendant. In this mediation statement, Argenis' attorney explicitly alleged that Argenis and Waldy "would routinely use the fire escapes to access the building" and adjacent dumpsters, and at the time of the Underlying Incident, they "were leaving the third-floor apartment in order to retrieve additional tools." See **Exhibit B**. Therefore, at the time Security National concluded there was no coverage for the Underlying Accident, Security National was on notice of the allegation that the two men were still in the process of completing maintenance work.

59.     Then, on May 8, 2020, Counsel for Westminster sent an email to Ms. Corley and Mr. Arteca, providing Security National a final opportunity to reconsider its coverage position. In this email, Counsel also invited Security National to attend the mediation scheduled for May 13, 2020. Counsel for Altman joined in Westminster's Counsel's request that Security National participate in the mediation. See Emails from Counsel dated May 8, 2020 attached hereto as **Exhibit S**. Ms. Corley affirmatively rejected the invitation to participate in the mediation. See Email from Ms. Corley dated May 8, 2020, attached hereto as **Exhibit T**.

60.     On May 12, 2020, Underlying Counsel for Argenis and Munoz sent Ms. Corley a time-limited demand - demanding the full limits of AM Marlin's Policy ($1 million dollars) after hearing that Security National would not attend mediation. On May 13, 2020, Ms. Corley, on behalf of Security National, sent a letter to Counsel for Argenis and Munoz (just three minutes before the 5:00 P.M. deadline imposed by their counsel, Mr. Baldo), acknowledging but denying his demand for the full $1 million-dollar limits of AM Marlin's policy. See Correspondence from Mr. Baldo and Ms. Corley's response thereto, attached hereto collectively as **Exhibit U**. Importantly, Security never advised Waldy Reyes, or his attorney, Mr. Thomas F. Sacchetta, about

the time-limited demand. Upon information and belief, AM Marlin was also not advised of Mr. Baldo's demand.[2]

61.     In her May 13th letter, Ms. Corley reiterated Defendant's prior coverage position, stating that AM Marlin "did not provide any service or work related to the exterior balcony which failed and caused your client's injuries," "does not own, supervise, maintain or manage the premises," "owed no duty to your clients (sic) and breached no duty resulting in" Argenis's and Munoz's injuries. Id. Ms. Corley made these statements despite the fact that Security National was on notice of Reyes and Munoz's allegation that AM Marlin's maintenance operations at the Property were ongoing at the time of the Underlying Incident because 1). the men were in the process of discarding debris from the interior of the building; and 2) they were on their way to retrieve tools from a vehicle parked nearby.

62.     On May 20, 2020, Counsel for Waldy Reyes sent a letter to Ms. Corley requesting Defendant acknowledge its coverage obligation to Waldy and resolve the potential claims against him by Argenis and Munoz. See Correspondence from Mr. Sacchetta attached hereto as **Exhibit V**. This letter memorialized the expiration of Argenis and Munoz's initial demand of $1 million dollars (because of Security National's denial of same on May 13, 2020), which had now increased to $5 million dollars. Not surprisingly, Security National never responded.

63.     Furthermore, Defendant never interviewed the Underlying Claimants (including Waldy Reyes, an employee of its named insured) before wrongfully denying their claims and the defenses tendered to Security National.

---

[2] Making matters worse, it appears Defendant never sent Waldy Reyes a Reservation of Rights letter and/or an Excess Letter.

64.     Defendant wrongfully denied coverage for the Underlying Claimants' claims based exclusively upon Defendant's assessment of *where* the Underlying Incident occurred rather than *how, why or when* it occurred.

### Security National's Amended Coverage Position After Hiring Coverage Counsel

65.     On May 21, 2020, Plaintiffs received correspondence from Defendant's coverage counsel attempting to supplement Security National's prior disclaimers of coverage. See Correspondence from Mr. Syken attached hereto as **Exhibit W**. This was the first letter received from Defendant from any person other than Mr. Arteca and Ms. Corley.

66.     Despite acknowledging that Waldy and Argenis were both working in the course and scope of their employment for AM Marlin and Altman, respectively, and that Chester Ave. was a scheduled insured for work performed on AM Marlin's behalf at the Property, Defendant's coverage counsel doubled down on Ms. Corley's prior position. Id.

67.     More specifically, Defendant's coverage counsel stated that Chester Ave. did not trigger the additional insured endorsement because "[t]here is no indication that AM Marlin has any liability for the loss, or that Chester Ave. is being 'held liable' for AM Marlin's acts or omissions arising out of AM Marlin's ongoing operations performed for Altman Chester Ave. (sic.)." Id. at 6. Accordingly, Defendant's coverage counsel implicitly argues that Chester Ave. would only qualify as an additional insured if Chester Ave.'s liability for AM Marlin's acts or omissions is conclusively determined by way of a final judgment. Id.

68.     Additionally, Defendant's coverage counsel raised - again, for the first time - a new (though still erroneous) argument that "any coverage obligation for Chester Ave. under [the Blanket Additional Insured Endorsement] would be excess to Chester Ave.'s own liability

17

coverage." Id. at 6.[3] Defendant's reasoning contradicts the plain language of the Other Insurance provisions described above. See supra ¶¶ 36-40.

69.     Finally, Defendant's coverage counsel raised *for the first time* the argument that coverage was foreclosed by "the Absolute Employer's Liability Exclusion." See **Exhibit W** at 6-7. Defendant argues that the exclusionary language for bodily injury to an employee of "any insured" precludes coverage because Waldy Reyes was an employee of AM Marlin, the named insured, and Argenis Reyes was an employee of Altman, an additional insured. See id.; see also Employer's Liability Exclusion Endorsement to AM Marlin Policy attached hereto as **Exhibit X**.

70.     Defendant's coverage position is untenable on all fronts. On the one hand, Defendant's coverage counsel argues that Chester Ave. *is not an additional insured* because it was not "being held liable" for AM Marlin's ongoing operations. See **Exhibit W** at 6. On the other hand, counsel argues that Altman *is an additional insured* for purposes of invoking the Employer's Liability Exclusion Endorsement even though Altman *is immune* from Argenis Reyes's claim and **cannot** be "held liable" in tort. Id. at 7.

71.     In short, Defendant cannot have its cake (by denying Chester Ave. additional insured status because it has not been held liable) and eat it too (by relying on Altman's additional insured status even though it is immune from liability).

72.     Setting aside the fact that this coverage position is substantively untenable, the lengths to which Security National is attempting to torture its policy language (by interpreting that language in a different manner depending on the insured that they attempt to apply it to) is the epitome of bad faith.

---

[3] As an aside, even if this argument was valid – which it clearly is not – Westminster's $5,000,000 excess policy is nonetheless *excess* to Security National's primary liability policy.

73.     As a result of Defendant's unreasonable coverage positions and its bad faith handling of the claims arising out of the Underlying Incident, Plaintiffs have sustained immense damages and prejudice. Defendant must be held responsible for its outrageous conduct.

## COUNT I
## DECLARATORY JUDGMENT
### Plaintiffs v. Security National

74.     Plaintiffs hereby incorporate the preceding paragraphs 1-73 of this Second Amended Complaint as though same were set forth at length herein.

75.     There is a genuine and *bona fide* dispute, controversy, and disagreement between Plaintiffs and Defendant regarding whether Chester Ave. was entitled to defense and indemnity for Underlying Claimants' claims, as an additional insured under AM Marlin's Commercial General Liability Policy.

76.     Both Plaintiffs and Defendant agree that Chester Ave.'s designation as a scheduled additional insured on AM Marlin Policy's "Blanket Additional Insureds-Owners, Lessees or Contractors" Endorsement entitles it to additional insured coverage under the AM Marlin Policy for certain claims.

77.     Plaintiffs aver that this endorsement extends coverage to Chester Ave. for this loss because Underlying Claimants' claims arose out of AM Marlin's ongoing interior remodeling and/or maintenance work performed at the Property on the behalf of Chester Ave.

78.     But for AM Marlin's work performed for Chester Ave., the Underlying Claimants would not have been on the fire escape balcony at the time it collapsed and would not have sustained the injuries they suffered.

79. Upon information and belief, at the time of Underlying Accident, the Underlying Claimants' made use of the fire escape balcony as a means of disposing of and/or cleaning up the debris created by AM Marlin's interior work.

80. Upon information and belief, at the time of Underlying Accident, the Underlying Claimants' were also using the fire escape balcony as a means of ingress/egress from the Property to a vehicle parked nearby for the purpose of retrieving materials or tools necessary to complete the ongoing interior remodeling and/or maintenance work at the Property on the behalf of Chester Ave.

81. Despite being aware of the nature of the Underlying Claimants' allegations, Defendant Security National nevertheless took the position that there was no coverage for Chester Ave. under AM Marlin's policy's "Blanket Additional Insureds-Owners, Lessees or Contractors" endorsement because Underlying Claimants' claims did not arise from AM Marlin's ongoing operations performed on the behalf of Chester Ave. at the Property. Security National has incorrectly asserted that AM Marlin's remodeling operations were unrelated to the fire escape balcony which collapsed and caused the Underlying Claimants' injuries.

82. Plaintiffs maintain that the use of the fire escape by the Underlying Claimants as a means of disposing of debris created by AM Marlin's work and/or as a means of ingress/egress to the Property is sufficiently related to AM Marlin's remodeling or maintenance operations such that this loss clearly "arises" from AM Marlin's work for purposes of the Endorsement.

83. Pursuant to its own terms, the AM Marlin Policy is primary as to any other insurance available to Plaintiff, Chester Ave., including the Westminster Policy, which is excess.

84. Accordingly, the Westminster Excess Policy was prematurely exposed because of Security National's failures to defend its insured, adequately investigate the underlying claim,

participate in mediation, and tender the policy limits on behalf of its insureds, AM Marlin and/or Chester Ave.

85.     Additionally, as a result of Security National's failures to defend its insured, adequately investigate the underlying claim, participate in mediation, and tender the policy limits on behalf of its insured, Westminster has incurred unnecessary costs by defending Chester Ave. since the time of the December 26, 2019 tender, which Defendant denied.

86.     Federal courts have continually held that such disputes, over the applicability and scope of coverage provided under an insurance policy, are ripe for determination by declaratory judgment. See e.g. ACandS, Inc., 666 F.2d at 822-23; Yellowbird Bus Co. v. Lexington Ins. Co., 2010 U.S. Dist. LEXIS 69554, at *10-11.

WHEREFORE, pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Plaintiffs respectfully request that this Honorable Court issue a judgment declaring that:

a) Underlying Claimants' claims arise from AM Marlin's ongoing operations being performed for Chester Ave. at the Property;

b) Security National was required to accept Westminster's December 26, 2019 tender in connection with Underlying Claimants' claims, pursuant to the Blanket Additional Insured Endorsement;

c) Security National should have undertaken the defense of Chester Ave. beginning on December 26, 2019 or shortly thereafter;

d) Security National was the primary insurer and Westminster was the excess insurer relative to Argenis's and Munoz's claims against Chester Ave. and AM Marlin;

e) Security National is estopped from asserting coverage defenses not stated during the scope of its "investigation" before the pre-suit mediation; and

    f)  Security National is obliged to reimburse any and all indemnity payments and/or defense costs associated with the Underlying Claims incurred by Westminster since December 26, 2019.

**COUNT II**
**DECLARATORY JUDGMENT**
**<u>Argenis Reyes and Rosalba Munoz, as Assignees of Chester Ave. v. Security National</u>**

87.    Plaintiffs hereby incorporate the preceding paragraphs 1-86 of this Second Amended Complaint as though same were set forth at length herein.

88.    As a result of Security National's failures to defend and indemnify Chester Ave., adequately investigate the underlying claims, participate in mediation, and tender the policy limits on behalf of its insured, Defendant breached a duty owed to its additional insured.

89.    In failing to consent to a fair and reasonable settlement, Defendant acted in its own self-interests rather than the interests of its scheduled additional insured, Chester Ave.

90.    By acting in its own self-interests rather than the interests of its scheduled additional insured Chester Ave., Defendant left Chester Ave. with no choice but to accept the fair and reasonable settlement even though it was in excess of the limits of its Westminster liability policies.

91.    Therefore, Defendant needlessly exposed Chester Ave. to damages that would otherwise be covered under AM Marlin's liability policy with Security National.

WHEREFORE, pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Plaintiffs respectfully requests that this Honorable Court issue a judgment declaring that:

    a)  Underlying Claimants' claims arise from AM Marlin's ongoing operations being performed for Chester Ave. at the Property;

22

b) Security National was required to provide Chester Ave. with a defense and indemnity against Underlying Claimants' claims pursuant to the Blanket Additional Insured Endorsement;

c) Security National should have undertaken the Defense of Chester Ave. beginning on December 26, 2019 or shortly thereafter;

d) Security National is estopped from asserting coverage defenses not stated during the scope of its "investigation" before the pre-suit mediation;

e) Security National is obliged to indemnify Chester Ave. by paying the $1 million-dollar limit on AM Marlin's liability policy to Argenis Reyes, to whom Chester Ave. assigned its rights against Defendant; and

f) Security National is obliged to indemnify Chester Ave. by also paying the balance of the settlement proceeds owed to Argenis and Munoz, in the amount of $24.6 million dollars.

## COUNT III
## DECLARATORY JUDGMENT
**Argenis Reyes and Rosalba Munoz, as Assignees of Waldy Reyes v. Security National**

92.     Plaintiffs hereby incorporate the preceding paragraphs 1-91 of this Second Amended Complaint as though same were set forth at length herein.

93.     As a result of Security National's failures to defend and indemnify Waldy Reyes, adequately investigate the underlying claims, participate in mediation, and tender the policy limits on behalf of its insured, Defendant breached a duty owed to its insured - an employee of its named insured.

94.     In failing to consent to a fair and reasonable settlement, Defendant acted in its own self-interests rather than the interests of Waldy Reyes, an employee of its named insured, AM Marlin.

95.     By acting in its own self-interests rather than the interests of its insured (the employee of its named insured), Defendant left Waldy Reyes with no choice but to accept the fair and reasonable settlement offered and to assign his rights to relief to Argenis and Munoz his rights to relief.

96.     Therefore, Defendant needlessly exposed Waldy Reyes to damages that would otherwise be covered under AM Marlin's liability policy with Security National.

WHEREFORE, pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Plaintiffs respectfully requests that this Honorable Court issue a judgment declaring that:

a) Underlying Claimants' claims arise from AM Marlin's ongoing operations being performed for Chester Ave. at the Property;

b) Security National was required to provide Waldy Reyes with a defense and indemnity against Underlying Claimants' claims pursuant to his status as an insured employee under AM Marlin's Policy;

c) Security National should have undertaken the Defense of Waldy Reyes beginning on December 26, 2019 or shortly thereafter;

d) Security National is estopped from asserting coverage defenses not previously stated; and

e)  Security National is obliged to indemnify Waldy Reyes by paying the balance of the settlement proceeds owed by Waldy to Argenis and Munoz, in the amount of $5 million dollars.

## COUNT IV
### STATUTORY BAD FAITH
### Argenis Reyes and Rosalba Munoz, as Assignees of Chester Ave. v. Security National

97.     Plaintiffs hereby incorporate the preceding paragraphs 1-96 of this Second Amended Complaint as though same were set forth at length herein.

98.     As assignees of Chester Ave., Argenis and Munoz bring this claim under Pennsylvania's bad faith insurance statute, 42 Pa.C.S.A. § 8371.

99.     All parties agree that Chester Ave. qualifies as an additional insured under AM Marlin's Security National Commercial General Liability Insurance Policy.

100.    As an additional insured, Security National had an obligation to exercise the utmost good faith in the handling of Chester Ave.'s claim for coverage.

101.    Despite this obligation, Security National wrongfully and in bad faith denied coverage to Chester Ave. for liability arising from the Underlying Incident.

102.    This denial of coverage was made in reckless disregard of the fact that Security National lacked a reasonable basis upon which to do so.

103.    Such a denial without a reasonable basis constitutes "bad faith" as set forth in 42 Pa.C.S.A. § 8371.

104.    Security National bad faith conduct toward Chester Ave. includes, but is not limited to:

a)  Failing to objectively and adequately evaluate or investigate Plaintiffs' claim as well as Underlying Claimants' claims;

25

b) Taking over four (4) months to issue its formal coverage position and then declining coverage to Chester Ave. for liability arising from the Underlying Incident;

c) Delaying issuance of its formal coverage position until May 6, 2020, despite knowledge that: (1) the Underlying Claimants made a time-limited demand for Policy Limits; (2) the parties had agreed to attend mediation on May 13, 2020; and (3) as early as January 15, 2020, Security National indicated it was aware of issues that precluded or limited coverage for Chester Ave. under the AM Marlin Policy;

d) Failing to reasonably investigate the claims, including but not limited to failing take a statement from Underlying Claimants at any time before denying coverage;

e) Failing to keep Chester Ave. adequately apprised of the status of its investigation of coverage for Underlying Claimants' claims;

f) Failing to timely make Chester Ave. aware of its coverage position such that Chester Ave. was prevented from settling Underlying Claimants' claims prior to agreeing to go to pre-suit mediation on same;

g) Failing to undertake meaningful investigation of Underlying Claimants' claims prior to the issuance of its formal coverage position, denying coverage to Chester Ave. for same;

h) Denying coverage for Underlying Claimants' claims without any plausible evidence that these claims do not arise from the AM Marlin's ongoing operations performed for Chester Avenue;

i) Unreasonably withholding benefits under the AM Marlin Policy that Chester Ave. is rightfully entitled to as an additional insured on same;

j) Affirmatively misrepresenting pertinent facts and policy provisions relating to Chester Ave.'s right to additional insured coverage under the AM Marlin policy in order to achieve a coverage position favorable to Security National;

k) Adopting unduly restrictive interpretations of provisions within AM Marlin's Policy, in order to fabricate a basis upon which coverage to Chester Ave. could be denied;

l) Conducting an unfair, unreasonable, self-serving, and inadequate investigation of Chester Ave.'s and Underlying Claimants' claims;

m) Delaying issuance of its formal coverage position, such that Chester Ave. was placed in the precarious position of re-evaluating its settlement strategy just days before the scheduled pre-suit mediation on Underlying Claimants' claims;

n) Failing to acknowledge and/or appropriately respond to all of Plaintiffs' written and verbal communications regarding Chester Ave.'s coverage claims;

o) Denying coverage to Chester Ave., despite the fact that Pennsylvania law requires any determination as to coverage to be based upon the allegations included in Underlying Claimants' complaint, which has yet to be filed;

p) Ignoring the possibility that Underlying Claimants' complaint would likely include allegations that, if proven to be true, would extend additional insured coverage to Chester Ave. pursuant to the terms and conditions of the AM Marlin Policy;

q) Wrongfully and deliberately ignoring and eventually denying Chester Ave.'s claim for coverage, such that Chester Ave. was left with no choice but to settle a claim or be subjected to an excess judgment for which it would be held personally responsible;

r)   Failing to act in accordance with its duty of good faith and fair dealing in its interactions with its insured and/or other insurers, including Westminster;

s)   Offering illusory insurance coverage; and

t)   Relying upon inconsistent interpretations of its own policy language in order to conclude that the claims were not covered.

105.    As a result of Defendant's bad faith, Argenis and Munoz, as assignees of Chester Ave., were forced to initiate this lawsuit in order to enforce their assigned rights under the Policy.

106.    Argenis and Munoz, as assignees of Chester Ave., have and will surely continue to suffer damages as a result of Security National's wrongful, bad faith failure to timely respond to Chester Ave.'s claim for coverage and eventual denial of same.

WHEREFORE, Argenis Reyes and Rosalba Munoz, h/w, as assignees of Chester Ave., demand judgment against Defendant, Security National in an amount in excess of $75,000 together with costs, interest, and attorney's fees, punitive damages, and special damages provided for by 42 Pa.C.S.A. § 8371, along with such other and further relief as this Honorable Court deems necessary and/or appropriate.

### COUNT V
### STATUTORY BAD FAITH
### Argenis Reyes and Rosalba Munoz, as Assignees of Waldy Reyes v. Security National

107.    Plaintiffs hereby incorporate the preceding paragraphs 1-106 of this Second Amended Complaint as though same were set forth at length herein.

108.    As an assignee of Waldy Reyes, Argenis and Munoz bring this claim under Pennsylvania's bad faith insurance statute, 42 Pa.C.S.A. § 8371.

109.    Waldy Reyes qualified as an insured under AM Marlin's Security National Commercial General Liability Insurance Policy because he was an employee acting within the scope of his employment at the time of the Underlying Accident.

110.    Security National had an obligation to exercise the utmost good faith in the handling of potential claims against its named insured (AM Marlin) and its named insured's employee, Waldy Reyes.

111.    Despite this obligation, Security National has wrongfully and in bad faith denied coverage to Waldy Reyes for liability arising from the Underlying Incident.

112.    This denial of coverage was made in reckless disregard of the fact that Security National lacked a reasonable basis upon which to do so. Indeed, Security National did not even interview Waldy Reyes in the course of its "investigation" into coverage.

113.    Such a denial without a reasonable basis constitutes "bad faith" as set forth in 42 Pa.C.S.A. § 8371.

114.    Security National engaged in bad faith conduct toward Waldy Reyes, including but not limited to:

> a) Failing to objectively and adequately evaluate Plaintiffs' claim as well as Underlying Claimants' claims;
>
> b) Delaying issuance of its formal coverage position until May 6, 2020, despite knowledge that: (1) the Underlying Claimants made a time-limited demand for Policy Limits; (2) the parties had agreed to attend mediation on May 13, 2020; and (3) as early as January 15, 2020, Security National indicated it was aware of issues that precluded or limited coverage under the AM Marlin Policy;

c) Failing to take a statement from Underlying Claimants at any time before denying coverage;

d) Failing to keep Waldy Reyes adequately apprised of the status of its investigation of coverage for Underlying Claimants' claims;

e) Failing to timely make Waldy Reyes aware of its coverage position such that Waldy Reyes was prevented from settling Underlying Claimants' claims prior to agreeing to attend pre-suit mediation;

f) Failing to undertake meaningful investigation of Underlying Claimants' claims prior to the issuance of its formal coverage position;

g) Denying coverage to Waldy Reyes for Underlying Claimants' claims without any plausible evidence that these claims do not arise from the AM Marlin's ongoing operations performed for Chester Avenue;

h) Unreasonably withholding benefits under the AM Marlin Policy which Waldy Reyes is rightfully entitled to as an insured under same;

i) Misrepresenting pertinent facts and policy provisions relating to Waldy Reyes's right to coverage as an "employee" of the named insured on the AM Marlin policy;

j) Adopting unduly restrictive interpretations of provisions within AM Marlin's Policy, in order to fabricate a basis upon which coverage to Waldy Reyes could be denied;

k) Conducting an unfair, unreasonable, self-serving, and inadequate investigation of Underlying Claimants' claims;

l) Delaying issuance of its formal coverage position;

m) Failing to acknowledge and/or appropriately respond to all of Plaintiffs' written and verbal communications regarding Waldy Reyes's coverage claims;

n) Denying coverage to Waldy Reyes, despite the fact that Pennsylvania law requires any determination as to coverage to be based upon the allegations included in Underlying Claimants' complaint, which has yet to be filed;

o) Ignoring the possibility that Argenis and Munoz's complaint would likely include allegations that, if proven to be true, would extend coverage to Waldy Reyes as an "employee" under the AM Marlin Policy;

p) Wrongfully and deliberately ignoring and eventually denying Waldy Reyes's claim for coverage, such that he was forced to settle Argenis and Munoz' claim or be subjected to an excess judgment for which he would be held personally responsible; and

q) Failing to act in accordance with its duty of good faith and fair dealing in its interactions with its insured, Waldy Reyes.

115.    As a result of Defendant's bad faith, Argenis and Munoz, as assignees of Waldy Reyes, were forced to initiate this lawsuit in order to enforce Waldy Reyes' rights under the Policy.

116.    Argenis and Munoz, as assignees of Waldy Reyes, have and will surely continue to suffer damages as a result of Security National's wrongful, bad faith failure to properly respond to his claim for coverage, and eventual denial of same.

WHEREFORE, Argenis Reyes and Rosalba Munoz, h/w, as assignees of Waldy Reyes, demand judgment against Defendant, Security National in an amount in excess of $75,000, together with costs, interest, and attorney's fees, punitive damages, and special damages provided

for by 42 Pa.C.S.A. § 8371, along with such other and further relief as this Honorable Court deems necessary and/or appropriate.

**COUNT VI**
**BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING**
**Westminster v. Security National**

117.    Plaintiffs hereby incorporate the preceding paragraphs 1-116 of this Second Amended Complaint as though same were set forth at length herein.

118.    Pursuant to the "Other Insurance" clauses in the liability policies of AM Marlin and Chester Ave., Security National was the primary insurer and Westminster was the excess insurer for purposes of the Underlying Accident.

119.    Although there is no contractual privity between a primary and excess insurer, courts have found an implied duty of good faith and fair dealing between a primary and excess insurer. See, e.g., U.S. Fire Ins. Co. v. Royal Ins. Co., 759 F.2d 306 (3d Cir. 1985).

120.    Therefore, Security National owed Westminster a duty of good faith and fair dealing in handling the Underlying Claimants' claim and assuring that Chester Ave.'s liability policy with Westminster was not prematurely or improperly exposed or exhausted.

121.    The duty of good faith and fair dealing embodies the obligation of the primary insurer, Security National, to handle claims and settlement demands on behalf of its insureds in a manner that does not prematurely or improperly expose or exhaust the liability policy of the excess insurer, Westminster.

122.    In this instance, Security National breached its duty of good faith and fair dealing owed to Westminster by failing to accept a settlement offer within the limits of its policy based on an inadequate investigation and improper coverage defense(s). Indeed, Security National did not

even *entertain* the idea of settling, as it wholly refused to even *participate* in the underlying mediation regarding the claims of a man who was paralyzed in the Underlying Incident.

123.    Security National unduly prejudiced Westminster by way of its lack of specificity in response to Westminster's demands for defense and indemnification on behalf of Chester Ave. See generally Selective Way Ins. Co. v. Mak Services, Inc., No. 1289-EDA-2019, 2020 Pa. Super. 103 (Pa. Super. Ct. Apr. 24, 2020) (holding insurer must timely investigate claim and assert specific reasons that would render claim uncovered or risk being estopped from asserting those defenses if it causes prejudice).

124.    As pled more particularly elsewhere herein, Security National's investigation, evaluation, and processing of the Underlying Claimants' claims was unfair, unreasonable, incomplete and Defendant knew it to be so.

125.    Defendant was required to timely investigate this claim and assert specific reasons why it would not be covered. From the time of Westminster's tender on December 26, 2019 to Defendant's frivolous coverage defense asserted in Ms. Corley's May 6, 2020, Defendant merely asserted broad-sweeping boilerplate "reservations of rights" but failed to clearly communicate the bases for non-coverage until one week before the scheduled mediation. It was not until May 21, 2020 (after mediation and settlement of the claims) that Defendant explicitly invoked the supposedly applicable Employer's Liability Exclusion Endorsement.

126.    Security National placed its own interests above that of Westminster and their mutual insured, Chester Ave., and in doing so, Defendant breached of the duty of good faith and fair dealing it owed Westminster by prematurely exposing Westminster's excess policy.

WHEREFORE, Westminster demands judgment against Defendant, Security National in an amount in excess of $75,000, together with costs, interest, and attorney's fees, punitive

33

damages, and special damages provided for by 42 Pa.C.S.A. § 8371, along with such other and further relief as this Honorable Court deems necessary and/or appropriate.

**COUNT VII**
**BREACH OF INSURANCE CONTRACT**
**<u>Argenis Reyes and Rosalba Munoz, as Assignees of Chester Ave. v. Security National</u>**

127.    Plaintiffs hereby incorporate the preceding paragraphs 1-126 of this Second Amended Complaint as though same were set forth at length herein.

128.    As an assignee of Chester Ave., Argenis and Munoz bring this claim for breach of contract against Defendant.

129.    All parties agree that Chester Ave. qualifies as an additional insured under AM Marlin's Security National Commercial General Liability Insurance Policy.

130.    Defendant was obligated to provide Chester Ave. with defense and indemnity for any liability incurred by Chester Ave. as a result of AM Marlin's residential remodeling work at various locations throughout Philadelphia, PA.

131.    Defendant was indisputably obligated to provide Chester Ave. with defense and indemnity against Underlying Claimants' claims because these claims arose out of AM Marlin's residential remodeling work at the Property located in the University City section of Philadelphia, PA.

132.    Despite this obligation, Defendant made the unreasonable and untenable decision to deny Chester Ave. a defense and indemnity against Underlying Claimants' claims.

133.    Defendant's unreasonable and untenable decision to deny Chester Ave. additional insured coverage that was clearly owed under the AM Marlin Policy resulted in a breach of Defendant's contractual obligations under the AM Marlin Policy.

34

134. Defendant further breached its contractual obligations under the AM Marlin Policy in failing to properly and timely investigate Underlying Claimants' claims to determine if additional insured coverage under the Policy was owed to Chester Ave.

135. Despite the fact that Defendant indicated as early as January 15, 2020 that it "ha[d] identified coverage issues which may limit or preclude coverage for the claim under [AM Marlin's] policy," Defendant took nearly five (5) months to formalize its coverage position and convey this position to Chester Ave.

136. During these five months, Defendant failed to take any statements from Underlying Claimants and, upon information and belief, did not even reach out to its own named insured, AM Marlin, to discuss the Underlying Claimants' claims.

137. During these five months, despite receiving multiple correspondence from Chester Ave., Defendant failed to keep Chester Ave. reasonably apprised of the state of its investigation of Underlying Claimants' claims and the coverage for same.

138. Defendant failed to keep Chester Ave. reasonably apprised of the status of its investigation because there was no investigation to apprise Chester Ave. of. Simply put, Defendant did not conduct a meaningful investigation into Underlying Claimants' claims.

139. Instead, Defendant used the guise of a meaningful investigation to purposefully mislead Chester Ave. until the eve of mediation on Underlying Claimants' claims, at which time Defendant issued its formal coverage opinion denying Chester Ave. coverage under the AM Marlin Policy.

140. Following mediation, Defendant made a disingenuous attempt to amend or otherwise supplement its coverage declination –after the claims had settled—setting forth a number of purported additional bases upon which it claimed coverage was not owed to Chester

Ave. While Plaintiffs strictly deny the veracity of Defendant's retrospective coverage position, Defendant's attempt to amend and supplement its position is prima facie evidence that its initial coverage declination was baseless and in bad faith.

141.    In failing to conduct a meaningful investigation into Underlying Claimants' claims and keep Chester Ave. reasonably apprised of this investigation, Defendant breached its obligations owed to Chester Ave. as an additional insured under the AM Marlin Policy.

142.    In using its obligation to conduct a meaningful investigation as a means of misleading Chester Ave. and creating the situation in which Chester Ave. was left without coverage under the AM Marlin Policy on the eve of mediation, Defendant breached its obligations owed to Chester Ave. as an additional insured under the AM Marlin Policy.

143.    Finally, despite receiving information clearly demonstrating that Chester Ave. was entitled to additional insured coverage under the AM Marlin policy, Defendant declined to attend and participate in the mediation of Underlying Claimants' claims.

144.    Despite receiving information clearly demonstrating that the value of Underlying Claimants' claims was much greater than the AM Marlin Policy limits, Defendant denied Underlying Claimant Argenis's demand for payment of the Policy limits on Chester Ave.'s behalf.

145.    In failing to attend the mediation and accept Underlying Claimants' demand, Defendant breached its duty under the AM Marlin Policy.

146.    As a result of Defendant's breach of its obligations under the AM Marlin Policy, Argenis and Munoz, as assignees of Chester Ave., were forced to initiate this lawsuit in order to secure their assigned rights under the Policy.

147.    As a result of Defendant's breach of its obligations under the AM Marlin Policy, Chester Ave. was forced to pay additional monies to settle Underlying Claimants' claims that it

may not have otherwise had to pay had Defendant attended mediation and/or tendered the AM Marlin Policy limits in response to Underlying Claimant Argenis's demand.

WHEREFORE, Argenis Reyes and Rosalba Munoz, as assignees of Chester Ave., demand judgment against Defendant, Security National in an amount in excess of $75,000, together with costs, interest, and attorney's fees, punitive damages, along with such other and further relief as this Honorable Court deems necessary and/or appropriate.

**COUNT VIII**
**BREACH OF INSURANCE CONTRACT**
**Argenis Reyes and Rosalba Munoz, as Assignees of Waldy Reyes v. Security National**

148.     Plaintiffs hereby incorporate the preceding paragraphs 1-147 of this Second Amended Complaint as though same were set forth at length herein.

149.     As assignees of Waldy Reyes, Argenis and Munoz bring this claim for breach of contract against Defendant.

150.     As an employee of AM Marlin working within the scope of his employment at the time of the Underlying Incident, Waldy Reyes qualifies for coverage under AM Marlin's Security National Commercial General Liability Insurance Policy.

151.     Defendant was indisputably obligated to provide Waldy Reyes with defense and indemnity against Argenis's and Munoz's claims because these claims arose out of Waldy Reyes's residential remodeling work conducted on AM Marlin's behalf at the Property located in the University City section of Philadelphia, PA.

152.     Despite this obligation, Defendant made the unreasonable and untenable decision to deny Waldy Reyes a defense and indemnity against Underlying Claimants' claims.

153.    Defendant's unreasonable and untenable decision to deny Waldy Reyes coverage to which he was he was clearly entitled, resulted in a breach of Defendant's obligations under the AM Marlin Policy.

154.    Defendant breached its obligations under the AM Marlin Policy, in failing to properly and timely investigate and determine if coverage under the AM Marlin Policy was owed to Waldy Reyes for Argenis's and Munoz's claims.

155.    Despite the fact that Defendant indicated as early as January 15, 2020 that it "ha[d] identified coverage issues which may limit or preclude coverage for the claim under [AM Marlin's] policy," Defendant took nearly five (5) months to formalize its coverage position.

156.    During these five months, Defendant failed to take any formalized statements from Underlying Claimants and, upon information and belief, did not even reach out to its own named insured, AM Marlin, to discuss Underlying Claimants' claims.

157.    During these five months, Defendant failed to keep Waldy Reyes reasonably apprised of the state of its investigation of Argenis's and Munoz's claims.

158.    Upon information and belief, Defendant did not conduct any meaningful investigation into Underlying Claimants' claims.

159.    Instead, Defendant waited until after the mediation of Argenis's and Munoz's claims to issue its formal coverage position. As of the date of this filing, that position has still not been conveyed to Waldy Reyes or his counsel.

160.    The callousness of Defendant's conduct is best demonstrated by its disingenuous attempt to amend or otherwise supplement its prior improper coverage determination.

38

161.    In failing to conduct a meaningful investigation into Underlying Claimants' claims and keep Waldy Reyes reasonably apprised of the status of same, Defendant breached its obligations owed to Waldy Reyes as an insured under the AM Marlin Policy.

162.    In failing to apprise Waldy Reyes of its decision to deny coverage to him for the Argenis's and Munoz's claims, Defendant breached its obligations owed to Waldy Reyes as an insured under the AM Marlin Policy.

163.    Finally, despite receiving information that clearly demonstrated Waldy Reyes was entitled to additional insured coverage under the AM Marlin policy, Defendant declined to attend and participate in the mediation of Underlying Claimants' claims.

164.    Despite receiving information that clearly demonstrated the value of Argenis and Munoz's claims was much greater than the AM Marlin Policy limits, Defendant denied Underlying Claimants' demand for payment of the Policy limits on Waldy Reyes's behalf.

165.    In failing to attend the mediation and accept Argenis's and Munoz's demand, Defendant breached its duty under the AM Marlin Policy.

166.    As a result of Defendant's breach of its obligations under the AM Marlin Policy, Argenis and Munoz, as assignees of Waldy Reyes, were forced to initiate this lawsuit in order to secure their assigned rights under the Policy.

WHEREFORE, Argenis Reyes and Rosalba Munoz, as assignees of Waldy Reyes, demand judgment against Defendant, Security National in an amount in excess of $75,000, together with

costs, interest, and attorney's fees, punitive damages, along with such other and further relief as this Honorable Court deems necessary and/or appropriate.

Langsam Stevens Silver & Hollaender LLP

Dated: June 11, 2020

By: _____

Charles M. Adams, CPCU, Esquire
Pa. Identification No. 310405
1818 Market Street, Suite 2430
Philadelphia, PA 19103
T: 215-732-3255
F: 215-732-3260
E: CAdams@lssh-law.com
*Attorney for Plaintiffs*