IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WESTMINSTER AMERICAN | : | CIVIL ACTION |
| INSURANCE COMPANY and ARGENIS | : | |
| REYES and ROSALBA MUNOZ, h/w, | : | |
| as assignees of 4207 CHESTER AVE., LLC | : | |
| and WALDY REYES | : | |
| | : | |
| v. | : | |
| | : | |
| SECURITY NATIONAL INSURANCE | : | |
| COMPANY | : | NO. 20-2195 |

**MEMORANDUM**

**Padova, J.**                                                                                    **August 16, 2021**

Plaintiffs commenced this insurance coverage litigation against Defendant Security National Insurance Company ("SNIC"), after Plaintiff Argenis Reyes ("Argenis") was injured in a construction accident and SNIC refused to defend or indemnify parties that Argenis alleged were responsible for his injuries. Plaintiffs have asserted claims for declaratory judgment, breach of contract, statutory bad faith, and breach of the implied duty of good faith and fair dealing. Presently before the Court is SNIC's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), in which SNIC argues that it has no coverage obligations for Argenis's claims under the insurance policy at issue. We held argument on SNIC's Motion on August 4, 2021. For the reasons that follow, we now grant SNIC's Motion to Dismiss, concluding, inter alia, that SNIC had no duty to defend or indemnify in light of the policy's employer's liability exclusion.

I.      **BACKGROUND**

A.   The Underlying Incident

This case arises from a tragic accident in which Plaintiff Argenis and another individual, Waldy Reyes ("Waldy"),[1] were seriously injured while performing building maintenance work at

---

[1]   In spite of Argenis and Waldy sharing a last name, they are not related to each other.

4207 Chester Avenue in Philadelphia, on June 25, 2019.  (<u>See</u> Sec. Am. Compl. ("Compl.") ¶¶ 18, 21-22.)  Argenis and Waldy were standing on a third-floor fire escape balcony, discarding construction debris, when the balcony collapsed.  (<u>Id.</u> ¶¶ 18, 20.)  Waldy fell one story onto a second-floor landing, suffering two fractured ribs.[2]  (<u>Id.</u> ¶ 21.)  Argenis "fell multiple stories to the ground and suffered significant injuries, including . . . permanent paralysis."  (<u>Id.</u> ¶ 22.)

4207 Chester Ave., LLC ("Chester Ave.") is the owner of the property at 4207 Chester Avenue.  (<u>Id.</u> ¶ 23.)  Chester Ave. had hired Altman Management Company, Inc. ("Altman") to maintain and manage the property.  (<u>Id.</u> ¶ 19.)  Altman had, in turn, enlisted AM Marlin Construction, LLC ("AM Marlin") to repair a leak in the building's ceiling.  (<u>Id.</u> ¶ 11; Mediation Statement, Compl. Ex. B, at 2-3 of 5.)  Argenis was employed by Altman, and Waldy was employed by AM Marlin.  (Compl. ¶ 19.)  Both Argenis and Waldy "were working in their capacity as employees of AM Marlin and[] Altman" when the balcony collapsed.  (<u>Id.</u>)  Following the accident, Argenis asserted that Chester Ave., AM Marlin, and Waldy were responsible both for his bodily injuries and for loss of consortium damages sustained by his wife, Rosalba Munoz ("Munoz").  (<u>Id.</u> ¶ 23.)

AM Marlin was the named insured under a commercial general liability policy issued by SNIC (the "Policy").  (<u>Id.</u> ¶ 26; Policy, Compl. Ex. F, at 4 of 67.)  As AM Marlin's employee, Waldy was covered under the Policy "for acts within the scope of [his] employment [by AM Marlin] or while performing duties related to the conduct of [AM Marlin's] business."  (Compl. ¶ 34.)  In addition, the Policy listed both Chester Ave. and Altman as additional insureds under the Policy's "Blanket Additional Insureds-Owners, Lessees or Contractors Endorsement" Schedule, "but only to the extent that [Chester Ave. or Altman was] held liable for [AM Marlin's] acts or

---

[2] Although both Argenis and Waldy were injured in the accident, only Argenis's and his wife's claims for damages are currently at issue.

omissions arising out of your ongoing operations performed for [AM Marlin]."  (Compl. ¶ 27 and Ex. G at 2 of 3.)

Chester Ave. was also the named insured under a commercial general liability policy issued by Plaintiff Westminster American Insurance Company ("Westminster"), which, according to the Complaint, provided for insurance that was excess to that provided in AM Marlin's Policy with SNIC for claims arising from Argenis's injuries.  (Compl. ¶¶ 7, 38, 41 and Ex. I.)

B.  SNIC's Coverage Position

Westminster tendered Chester Ave.'s defense and indemnity with respect to Argenis's and Munoz's claims to SNIC on December 26, 2019, asserting that Chester Ave. was an additional insured under the Policy's Blanket Additional Insureds-Owners, Lessees or Contractors Endorsement, which, according to Westminster, provided coverage to Chester Ave. for "liability arising out of [] AM Marlin's work at [Chester Ave.'s] Property."  (Id. ¶¶ 40-41 and Ex. J.)  SNIC responded that it would investigate the claims, and shortly thereafter, on January 15, 2020, it informed Westminster that it "'ha[d] identified coverage issues.'"  (Id. ¶ 44 (alteration in original) (quoting Compl. Ex. M).)  By April 3, 2020, when SNIC had still not informed Westminster or Chester Ave. of its precise coverage position, Westminster sent a letter requesting a formal response to its tender, stating that SNIC was "impeding [Argenis's and Munoz's] ability to settle [their] claims against Chester Ave."  (Id. ¶¶ 46, 47 and Ex. O.)  The letter included Argenis and Munoz's demand package, along with an expert report regarding the "nature of th[e] claims and the extent of the alleged damages."  (Id. ¶ 48 and Ex. O.)

In response, SNIC reiterated that it "'ha[d] identified coverage issues which may preclude coverage for the claim under the [Policy].'"  (Id. ¶ 49 (first alteration in original) (quoting Compl. Ex. P).)  On May 6, 2020, SNIC formally denied coverage to Chester Ave., stating that Chester Ave.'s "coverage [under the Policy was] limited to the extent Chester Ave. is held liable for AM

Marlin's acts and/or omissions arising out of AM Marlin's ongoing operations performed for Chester Ave" (<u>id.</u> ¶ 50 and Ex. Q), and taking the position that this coverage was not triggered because "AM Marlin did not perform any work for Chester Ave. on the Property's fire escape balcony that collapsed." (<u>Id.</u> ¶ 54.)

Two days after SNIC's formal denial, on May 8, 2020, Westminster's counsel asked SNIC to reconsider its coverage position and invited SNIC to attend a pre-suit mediation on May 13, 2020. (<u>Id.</u> ¶ 59 and Ex. S.) However, SNIC declined Westminster's invitation. (<u>Id.</u> ¶ 59 and Ex. T.) After learning that SNIC would not attend, Argenis and Munoz's counsel "demand[ed] the full limits of AM Marlin's Policy ($1 million dollars)" the day before the mediation. (<u>Id.</u> ¶ 60.) SNIC denied the demand on May 13, 2020, explaining that "AM Marlin 'did not provide any service or work related to the exterior balcony which failed and caused your client's injuries,' does not own, supervise, maintain or manage the premises,' 'owed no duty to your clients . . . and breached no duty resulting in' Argenis's and Munoz's injuries." (<u>Id.</u> ¶¶ 60, 61 (quoting Compl. Ex. U.) At the May 13, 2020 mediation, which SNIC did not attend, Argenis and Munoz settled and released their claims against Chester Ave. and Waldy, and obtained from Chester Ave. and Waldy an assignment of their rights to assert claims against SNIC for failing to provide coverage to Chester Ave. and failing to defend and indemnify Waldy. (<u>Id.</u> ¶ 25.) Specifically, the parties agreed to resolve the claims as follows:

> a. Argenis and Munoz released their claims against Chester Ave. in exchange for $30 million dollars, partial satisfaction of which was accepted through receipt of $5.4 million dollars payable under Chester Ave.'s primary ($1 million-dollar limit) and excess ($5 million-dollar limit) insurance policies with Westminster;

> b. In order to achieve full satisfaction of the settlement, Chester Ave. also agreed to assign its rights to Argenis and Munoz to assert any claims it may have against [SNIC] for failing to provide coverage to Chester Ave. as an additional insured;

> c. Argenis and Munoz released their claims against Waldy in exchange [for] $5 million dollars, to be satisfied by Waldy through an assignment of Waldy's rights

to assert claims against [SNIC] for failing to defend and indemnify Waldy as an employee of [SNIC's] named insured, AM Marlin; and

d. Waldy released his claims against Chester Ave. and Altman in exchange for a confidential figure which the parties agreed was a fair and reasonable valuation of his claims.

(Id.; see also Compl. Exs. D & E.)   After the mediation, Waldy's counsel contacted SNIC "requesting [that SNIC] acknowledge its coverage obligation to Waldy and resolve the potential claims against him by Argenis and Munoz."  (Id. ¶ 62 and Ex. V.)

The next day, on May 21, 2020, SNIC's coverage counsel sent a letter to Westminster's counsel and stated for the first time that coverage was foreclosed by the Policy's Employer's Liability Exclusion (the "ELE").   (Id. ¶¶ 65, 69 and Ex. W.)  Specifically in this regard, SNIC asserted that the ELE excluded coverage for bodily injury to an employee of "any insured" and that the ELE therefore precluded coverage for Argenis's bodily injuries because he was an employee of Altman, which was an additional insured under the SNIC policy.  (Id. ¶ 69 and Ex. W.)

Following SNIC's continued refusal to acknowledge coverage under the Policy, Plaintiff Westminster, along with Plaintiffs Argenis and Munoz, as assignees of Chester Ave. and Waldy, filed the instant action against SNIC, asserting eight claims for relief.  Count I seeks a declaratory judgment that SNIC is required to defend and indemnify Chester Ave. and reimburse Westminster for the costs of Chester Ave.'s defense.  Count II seeks a declaratory judgment that SNIC is required to pay its policy limit and indemnify Chester Ave. for the $24.6 million-dollar settlement with Argenis and Munoz and the $1 million-dollar limit on AM Marlin's liability policy.  Count III seeks a declaratory judgment that SNIC improperly failed to defend Waldy and is required to indemnify Waldy for the $5 million settlement with Argenis and Munoz.  Counts IV and V assert statutory bad faith claims pursuant to 42 Pa. Cons. Stat. Ann. § 8371, maintaining, inter alia, that SNIC denied coverage to Chester Ave. and Waldy in bad faith without a reasonable basis.  Count

VI asserts a claim for breach of the implied duty of good faith and fair dealing on behalf of Westminster.  Counts VII and VIII assert breach of contract claims by Argenis and Munoz as assignees of Chester Ave. and Waldy.

## II.    LEGAL STANDARD

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), we "'consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'" Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)). We accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff.  DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (quoting Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)).  However, we are "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  Wood v. Moss, 572 U.S. 744, 755 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

The complaint must set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), that gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Moreover, the complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'"  Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

## III.   DISCUSSION

SNIC has moved to dismiss the Complaint pursuant to Rule 12(b)(6) maintaining that it has no duty to defend or indemnify Chester Ave. or Waldy.   Among other arguments, SNIC argues that it has no duty to defend or indemnify Chester Ave. or Waldy because coverage for Argenis's claims against them was excluded by the ELE.   SNIC further argues that because it has no coverage obligations to Chester Ave. or Waldy, the bad faith claims must also be dismissed.   In addition, with respect to Westminster's breach of good faith and fair dealing claim, SNIC argues that the claim is subsumed by the breach of contract and bad faith claims brought on Chester Ave.'s behalf and should be dismissed for the same reasons.

### A.   Standard for Interpreting Insurance Contracts

"'[T]he task of interpreting [an insurance] contract is generally performed by a court rather than by a jury.'"   Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999) (alterations in original) (quoting Gene & Harvey Builders v. Pennsylvania Mfrs. Ass'n, 517 A.2d 910, 913 (Pa. 1986)).   In interpreting a policy, the court's primary consideration is "to ascertain the intent of the parties as manifested by the language of the written instrument."   Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983) (citation omitted). Moreover, "[c]ourts interpret coverage clauses broadly 'to afford the greatest possible protection to the insured,' and, accordingly, they interpret exceptions to an insurer's general liability narrowly against the insurer."   Verticalnet, Inc. v. U.S. Specialty Ins. Co., 492 F. Supp. 2d 452, 456 (E.D. Pa. 2007) (quoting Westport Ins. Corp. v. Bayer, 284 F.3d 489, 498 n.7 (3d Cir. 2002)).   The "insurance policy must be read as a whole and construed according to the plain meaning of its terms."   C.H. Heist Caribe Corp. v. Am. Home Assurance Co., 640 F.2d 479, 481 (3d Cir.1981). Furthermore, the court must enforce the plain language of the policy if its terms are clear and unambiguous.   Standard Venetian Blind, 469 A.2d at 566 (citation omitted).

"'Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement.'" Madison Constr. Co.., 735 A.2d at 106 (quoting Gene & Harvey Builders, 517 A.2d at 913). "Contractual language is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'" Id. (quoting Hutchison v. Sunbeam Coal Co., 519 A.2d 385, 390 (Pa. 1986)); see also United States v. Pantelidis, 335 F.3d 226, 235 (3d Cir. 2003) ("A contract is ambiguous 'where the contract is susceptible of more than one meaning,' or 'if it is subject to reasonable alternative interpretations.'" (first quoting Sumitomo Mach. Corp. of Am. v. AlliedSignal, Inc., 81 F.3d 328, 332 (3d Cir. 1996); then quoting Taylor v. Cont'l Grp. Change in Control Severance Pay Plan, 933 F.2d 1227, 1232 (3d Cir. 1991))).  A court should not, "however, distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." Madison Constr. Co., 735 A.2d at 106 (citing Steuart v. McChesney, 444 A.2d 659, 663 (Pa. 1982)).  Rather, policy provisions should be read "to avoid ambiguities if possible and [a court] should not torture the language to create them." Spezialetti v. Pac. Emps. Ins. Co., 759 F.2d 1139, 1142 (3d Cir. 1985)).  "The burden of proving that a particular claim falls within the coverage of a policy is on the insured." Jacobs Constructors, Inc. v. NPS Energy Servs., Inc., 264 F.3d 365, 376 (3d Cir. 2001) (citing Erie Ins. Exch. v. Transamerica Ins. Co., 533 A.2d 1363, 1366-67 (1987)).

B. Declaratory Judgment & Breach of Contract Claims – Counts I, II, III, VII, and VIII

Counts I, II, and III seek declaratory judgments that SNIC has a duty defend and indemnify Chester Ave. and Waldy against Argenis's and Munoz's claims.  Counts VII and VIII assert similar breach of contract claims as assignees of Chester Ave. and Waldy based on SNIC's failure to defend and indemnify them.  As noted above, SNIC argues, inter alia, that these Counts fail to

state a claim upon which relief can be granted because Plaintiffs' claims are barred by the Policy's ELE.

Under Pennsylvania law, an "insurer's duty to defend an insured and its duty to indemnify are distinct, though related obligations." Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co., 939 F.3d 243, 249 (3d Cir. 2019) (citing Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 896 n.7 (Pa. 2006). "Both are creations of contract." Id. (citations omitted). Because the "duty to defend is purely contractual, . . . an insurer has no duty to defend unless the obligation is expressed in the policy." Genaeya Corp. v. Harco Nat. Ins. Co., 991 A.2d 342, 347 (Pa. Super. Ct. 2010) (citation omitted); see also AstenJohnson, Inc. v. Columbia Cas. Co., 562 F.3d 213, 229 (3d Cir. 2009) (stating that an insurer has no obligation to defend an insured "in the absence of contractual language creating such an obligation" (citations omitted)). At the same time, "the duty to defend is 'broader' than the duty to indemnify, [so that] if a court determines that the former does not exist, neither does the latter." Sapa Extrusions, 939 F.3d at 250 (citing Kvaerner, 908 A.2d at 896 n.6; Ramara, Inc. v. Westfield Ins. Co., 814 F.3d 660, 673 (3d Cir. 2016)).

An insurer "bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage." State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009) (citing Koppers Co. v. Aetna Cas. & Sur. Co., 98 F.3d 1440, 1446 (3d Cir. 1996)). SNIC maintains that the ELE excludes coverage to Chester Ave. and Waldy for Argenis's bodily injury claims and Munoz's corresponding loss of consortium claim. The ELE modifies the Policy to exclude coverage for "'Bodily Injury' to: (1) An 'employee' . . . of any insured arising out of and in the course of: (a) Employment by any insured; or (b) Performing duties related to the conduct of an insured's business." (Policy at 17 of 67.) The Policy further notes that the ELE applies "[w]hether an insured may be liable as an employer or in any other capacity." (Id.)

As noted above, Altman, which is Argenis's employer, is listed in the Policy's Blanket Additional Insureds Schedule as an additional insured.  (Compl., Ex G. at 2 of 3.)  The provision amends who is an insured "to include the person or organization shown in the Schedule, but only to the extent that the person or organization shown in the Schedule is held liable for [AM Marlin's] acts and omissions arising out of [AM Marlin's] ongoing operations performed for that insured." (Id. (emphasis omitted).)  SNIC takes the position that because Altman is listed on the Policy's Schedule as an additional insured, Argenis is necessarily an employee of "any insured," and his bodily injury claims are thus excluded from coverage under the ELE.

"Under Pennsylvania law, '[an] employee injury exclusion provision applie[s] to additional insureds seeking coverage under the policy, and not just to the primary purchaser of the policy." Brown & Root Braun, Inc. v. Bogan Inc., 54 F. App'x 542, 546 (3d Cir. 2002).  Courts have held that the use of "any insured" language in a policy's exclusion is construed to bar coverage to all insureds when the exclusion is triggered.  See Travelers Home & Marine Ins. Co. v. Stahley, 239 F. Supp. 3d 866, 875 (E.D. Pa. 2017) (concluding that intentional act exclusion was "clear and unambiguous . . . and the terms of the Policy preclude[d] coverage to all named insureds"); Michael Carbone, Inc. v. Gen. Acc. Ins. Co., 937 F. Supp. 413 (E.D. Pa. 1996) (observing that "the bulk of the courts . . . have held that an exclusion worded 'any insured' unambiguously expresses a contractual intent to create joint obligations and preclude coverage to innocent co-insureds"); see also Szeles Real Estate Dev. Co., L.P. v. Hartford Cas. Ins. Co., Civ. A. No. 12-7145, 2013 WL 3865104, at *3 (E.D. Pa. July 25, 2013) (granting insurer's motion to dismiss because the "employee injury exclusion provision of [an] insurance policy bar[red] coverage for [an additional insured] with respect to the personal injury claims of the [named insured's] employees." (alterations in original) (quoting Brown & Root Braun, 54 F. App'x at 546)); Ferrino v. Pac. Indem. Co., Civ. A. No. 95-102, 1996 WL 32146, at *3 (E.D. Pa. Jan. 24,

1996) (noting that "policy language referring to 'any insured' or similar language is unambiguous and indicates that the insureds' obligations and interests are joint" (citations omitted)).

Plaintiffs, however, contend that Altman is not an additional insured and that, consequently, the ELE is inapplicable to Argenis's bodily injury claims and Munoz's corresponding loss of consortium claim.  Plaintiffs rely on the aforementioned provision that states that an insured "include[s] the person or organization shown in the Schedule, but only to the extent that the person or organization shown in the Schedule is held liable for [AM Marlin's] acts and omissions arising out of [AM Marlin's] ongoing operations performed for that insured." According to Plaintiffs, Altman does not qualify as an additional insured because it cannot be "held liable" for Argenis's injuries in light of the Pennsylvania Workers' Compensation Act exclusivity provision, which bars Argenis from asserting additional claims against Altman as his employer. See 77 Pa. Stat. Ann. § 481(a) ("The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employe[e]s, . . . or anyone otherwise entitled to damage . . . on account of injury or death").  In support, Plaintiffs cite cases in which plaintiff-employers sought coverage as additional insureds, but were ultimately denied coverage because they could not be held liable within the policy's language due to the applicable state's workers' compensation acts.  See, e.g., Graham Constr., Inc. v. Markel Am. Ins. Co., 180 F. Supp. 3d 626, 630, 638 (D. Neb. 2016) (finding no coverage obligation plaintiff as an "additional insured" where the policy stated that no coverage would be provided in the absence of the employer's liability and the employer was "shielded from liability" under the workers' compensation act).  Moreover, Plaintiffs argue, even if Altman could be held liable within the Policy's language, Altman cannot be held liable for AM Marlin's acts or omissions because AM Marlin was not performing work for Altman when the accident occurred.  In other words, according to Plaintiffs, the Policy's language that provides coverage to an additional insured, but only to the extent that an additional

11

insured is held liable for AM Marlin's acts or omissions, creates a condition precedent to achieving status as an insured, and, as a result, Altman is merely a "potential insured" until it meets the criteria.  (N.T. 8/4/21 at 67.)

Plaintiffs' argument, however, conflates two distinct inquiries when assessing coverage disputes: (1) whether a party seeking coverage is an additional insured under the terms of a policy and (2) if so, whether that party is indeed covered under the policy.  See Jacobs Constructors, Inc. v. NPS Energy Servs., Inc., 264 F.3d 365, 374-75 (3d Cir. 2001) (recognizing that a defendant had complied with its contractual obligation to acknowledge the plaintiff as an additional insured, "even though the [defendant's insurance] policy d[id] not cover [the plaintiff's] contractual liability").  Therefore, the pertinent question before us is whether Altman qualifies as "any insured" within the meaning of that term in the ELE, not, as Plaintiffs suggest, whether Altman is actually entitled to coverage under the Policy as an additional insured.  Indeed, the ELE accounts for this scenario, explicitly stating that the exclusion apples "[w]hether an insured may be liable as an employer or in any other capacity."  (Policy at 17 of 67.)  Therefore, we conclude that Altman qualifies as an additional insured by virtue of being listed in the Policy's Blanket Additional Insureds Schedule.  Furthermore, whether Altman was—or can be—held liable to Argenis for AM Marlin's acts or omissions speaks only to the scope of the coverage afforded by the Policy, not whether Altman qualifies as "any insured" under the Policy.

As stated above, the ELE explicitly excludes coverage for bodily injury to an employee of "any insured."  (Id.)  The Complaint asserts, and it is undisputed, that Argenis was an employee of Altman, which is listed in the Policy's Schedule as an additional insured.  (Compl. ¶¶ 11, 23.) Under the plain language of the Policy, Altman therefore qualifies as an insured under the Policy and the ELE precludes coverage for the bodily injury claims of its employee, Argenis, and for Munoz's related loss of consortium claims.  See Perloff v. Transamerica Life Ins. Co., 393 F. Supp.

3d 404, 411 (E.D. Pa. 2019) ("Loss of consortium claims are derivative in nature and will be dismissed where the underlying claims do not survive."). To find otherwise, would "distort the meaning of the language." Madison Constr. Co., 735 A.2d at 106 (citing Steuart, 444 A.2d at 663). Accordingly, we conclude that, under the terms of the Policy, SNIC is not required to defend and indemnify either Chester Ave. or Waldy against claims asserted by Argenis and Munoz.

Plaintiffs alternatively argue that, even if the ELE would ordinarily apply to bar coverage here, SNIC should be estopped from raising the ELE as a defense because SNIC waited until after it had denied coverage and eight days after the mediation to cite that exclusion as one of its reasons for denying coverage. To show that estoppel is warranted, a plaintiff must establish "'(1) an inducement whether by act, representation, or silence when one ought to speak, that causes one to believe the existence of certain facts; (2) justifiable reliance on that inducement; and (3) prejudice to the one who relies if the inducer is permitted to deny the existence of such facts.'" Hemphill v. Landmark Am. Ins. Co., Civ. A. No. 19-5260, 2020 WL 3871295, at *12 n.7 (E.D. Pa. July 9, 2020) (quoting West Chester Univ. Found. v. MetLife Ins. Co. of Connecticut, 259 F. Supp. 3d 211, 222 (E.D. Pa. 2017)).

In support, Plaintiffs rely on Selective Way Insurance Co. v. MAK Services, Inc., 232 A.3d 762 (Pa. Super. Ct. 2020). There, the insurer agreed to defend its insured under a reservation of rights and then, eighteen-months after the complaint was filed, raised an exclusion that it had not referenced in its reservation of rights letter and sought a declaratory judgment that it had no duty to defend. Id. at 765-66. The Pennsylvania Superior Court held that, as a result of the insurer's delay, the insurer was estopped from raising the exclusion, emphasizing that the insurer had "waited eighteen months [after the filing of the underlying complaint] to raise the policy exclusion, and provided no further intervening notice to [the insured] . . . that it would have to mount a defense to the [underlying plaintiffs'] civil action on its own." Id. at 771-72. The court further noted that

13

an insurer "may be estopped from asserting a policy exclusion where it has 'lulled the insured into a sense of security to his detriment.'"  Id. at 771 (quoting Nichols v. Am. Cas. Co. of Reading, Pa., 225 A.2d 80, 82 (Pa. 1966)).

Here, the Complaint asserts that Westminster tendered Chester Ave.'s defense and indemnity to SNIC on December 26, 2019.  (Id. ¶ 41.)  Within a month, SNIC advised Westminster that it had identified coverage issues.  (Id. ¶ 44.)  Furthermore, on May 6, 2020, one week before the mediation, SNIC formally denied coverage.  (Id. ¶ 50.)  In its denial letter, SNIC stated that "coverage is limited to the extent Chester Ave. is held liable for AM Marlin's acts and/or omissions arising out of AM Marlin's ongoing operations performed for Chester Ave.," and because SNIC determined "that AM Marlin did not perform any work for Chester Ave. on the Property's fire escape balcony that collapsed," coverage was unavailable under the Policy. (Id. ¶¶ 52-54.)  SNIC also declined Westminster's request to reconsider its coverage position and rejected its invitation to participate in the mediation.  (Id. ¶ 59.)  After the mediation, on May 20, 2020, Waldy's counsel requested that SNIC "acknowledge its coverage obligation to Waldy and resolve the potential claims against him by Argenis and Munoz."  (Id. ¶ 62.)  SNIC raised the ELE as an additional basis for denial on May 21, 2020, less than two weeks after the instant action was commenced. (Id. ¶¶ 65, 69.)

Accepting these allegations as true, we can only reasonably infer that Chester Ave. and Waldy were aware that SNIC had identified coverage issues less than a month after Westminster's tender and were formally notified that SNIC had denied coverage on May 6, 2020, prior to attending the mediation.  Therefore, in contrast to the insurer in Selective Way, SNIC never agreed to defend Chester Ave. and Waldy and did not similarly "'lull[] [Chester Ave. and Waldy] into a sense of security to [their] detriment.'"  Selective Way, 232 A.3d at 771 (quoting Nichols, 225 A.2d at 82).  Consequently, we do not find Selective Way to support the application of estoppel

principles here.  Moreover, Plaintiffs have developed no other persuasive argument for the application of estoppel principles.  We therefore conclude that estoppel is inappropriate under the circumstances presented here, and SNIC may raise the ELE as a defense.  Accordingly, we grant SNIC's Motion to Dismiss the declaratory judgment claims in Counts I, II, and III, as well as the related breach of contract of claims in Counts VII and VIII, based on SNIC's failure to defend and indemnify Chester Ave. and Waldy, as a result of our conclusion that the ELE clearly and unambigously precludes coverage for Argenis's bodily injury claims and Munoz's related loss of consoritum claims.[3]  See Standard Venetian Blind, 469 A.2d at 566 (requiring the court to enforce clear and unambiguous policy language).

    C.  Bad Faith Claims – Counts IV and V

In Counts IV and V, Argenis and Munoz assert bad faith claims pursuant to 42 Pa. Cons. Stat. Ann. § 8371 as assignees of Chester Ave. and Waldy.  More specifically, Counts IV and V allege that SNIC failed to adequately investigate the claims and denied coverage to Chester Ave. and Waldy in bad faith without a reasonable basis for doing so.  SNIC maintains that the Court should dismiss both counts as a matter of law because its decision to deny coverage was reasonable.

Under the bad faith statute, a court may award compensation to an insured if it finds that "the insurer has acted in bad faith toward the insured." 42 Pa. Cons. Stat. § 8371.  Bad faith generally requires a plaintiff to establish that "the insurer: (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim."  J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 367 (3d Cir. 2004)

---

    [3] Because we conclude that under the ELE, SNIC had no duty to defend and indemnify Chester Ave. and Waldy in connection with Argenis's claims, we need not reach SNIC's alternative arguments for dismissal of the claims in Counts I, II, III, VII, and VIII.

(citing <u>W.V. Realty, Inc. v. N. Ins. Co.</u>, 334 F.3d 306, 311 (3d Cir. 2003)). "Although the term 'bad faith' is not defined by the Pennsylvania bad faith statute, Pennsylvania courts have interpreted it as 'any frivolous or unfounded refusal to pay proceeds of a policy.'" <u>Id.</u> (quoting <u>Terletsky v. Prudential Prop. & Cas. Ins. Co.</u>, 649 A.2d 680, 688 (Pa. Super. Ct. 1994); <u>see also</u> <u>Frog, Switch & Mfg. Co. v. Travelers Ins. Co.</u>, 193 F.3d 742, 751 n.9 (3d Cir. 1999) ("Bad faith is a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured." (citation omitted)). "A reasonable basis is all that is required to defeat a claim of bad faith." <u>Id.</u> (citing <u>Horowitz v. Fed. Kemper Life Assurance Co.</u>, 57 F.3d 300, 307 (3d Cir.1995)).

For the reasons discussed above, the ELE forecloses coverage to Chester Ave. and Waldy with respect to Argenis's and Munoz's claims. We are thus unable to conclude either that SNIC lacked a reasonable basis for denying the claim or that SNIC's refusal to provide coverage was "frivolous or unfounded." <u>See id.</u>; <u>see also</u> <u>Neshaminy Constructors, Inc. v. Fed. Ins. Co.</u>, Civ. A. No. 11-7168, 2012 WL 2362577, at *4 (E.D. Pa. June 21, 2012) ("Because there is no coverage under the contract for [the] claim, there can be no bad faith"). Moreover, in the absence of coverage, SNIC cannot have acted in bad faith insofar as it failed to investigate the uncovered claims. <u>Wedemeyer v. U.S. Life Ins. Co. in City of N.Y.</u>, Civ. A. No. 05-6263, 2007 WL 710290, at *9 (E.D. Pa. Mar. 6, 2007) ("[If a reasonable basis exists for an insurer's decision, even if the insurer did not rely on that reason, there cannot be bad faith."). Accordingly, we grant SNIC's Motion to Dismiss the bad faith claims in Counts IV and V.

D.   <u>Breach of the Implied Duty of Good Faith and Fair Dealing – Count VI</u>

Count VI asserts a claim for breach of the implied duty of good faith and fair dealing on behalf of Westminster only, maintaining that SNIC violated its duty to Westminster by "prematurely exposing" Westminster's excess policy. SNIC argues that this claim should be

dismissed as a matter of law because it is subsumed by the declaratory judgment claim in Count I, as well as by the bad faith and breach of contract claims brought on behalf of Chester Ave. in Counts IV and VII.

"It is well settled under Pennsylvania law that . . . an insurer is required to 'consider in good faith the interest of the insured as a factor in coming to a decision as to whether to settle or litigate a claim against the insured.'" U.S. Fire Ins. Co. v. Royal Ins. Co., 759 F.2d 306, 308-09 (3d Cir. 1985) (citing Cowden v. Aetna Cas. & Surety Co., 134 A.2d 223, 228 (Pa. 1957)). However, "while Pennsylvania law generally recognizes a duty of good faith in the performance of contracts, this duty 'does not create independent substantive rights.'" Burton v. Teleflex Inc., 707 F.3d 417, 432 (3d Cir. 2013) (quoting Commonwealth v. BASF Corp., No. 3127, 2001 WL 1807788, at *12 (Pa. Ct. Com. Pl. Phila. Cnty. Mar. 15, 2001) (citing JHE, Inc. v. Se. Pa. Transp. Auth., No. 1790 Nov. Term 2001, 2002 WL 1018941, at *5 (Pa. Ct. Com. Pl. Phila. Cnty. May 17, 2002)). Accordingly, the Third Circuit has held "that Pennsylvania recognizes no direct duty of good faith between a primary and an excess carrier." Puritan Ins. Co. v. Canadian Universal Ins. Co., 775 F.2d 76, 82 (3d Cir. 1985). Rather, "'an excess insurer who has discharged an insured's liability stands in the shoes of the insured and as subrogee may maintain an action for breach of the primary carrier's duty to act in good faith.'" Id. at 79 (quoting U.S. Fire Ins. Co., 759 F.2d at 309). Thus, "[u]nder equitable subrogation the rights of the excess carrier may not rise above those of the insured." Id. at 80-81. Because we have concluded that SNIC owed no duty to defend or indemnify Chester Ave.—Westminster's insured—and Westminster's rights may not rise above those of Chester Ave., which as we have previously concluded was not owed a defense or indemnity, we conclude that SNIC did not owe Westminster a duty to shield it from exposure as an excess carrier. See id. Accordingly, we grant SNIC's Motion to Dismiss Westminster's good faith and fair dealing claim in Count VI.

**IV.     CONCLUSION**

For the foregoing reasons, we conclude that Plaintiffs' Complaint fails to plausibly allege that SNIC owed a duty to defend or indemnify Chester Ave. or Waldy under the terms of the Policy, and we therefore dismiss the declaratory judgment and breach of contract claims. Moreover, the bad faith and breach of the duty of good faith and fair dealing claims fail for the same reasons. We therefore grant SNIC's Motion to Dismiss in its entirety and dismiss Plaintiffs' Complaint. An appropriate Order follows.

BY THE COURT:


/s/ John R. Padova
John R. Padova, J.