IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WESTMINSTER AMERICAN INSURANCE COMPANY, ET AL. | : | CIVIL ACTION |
| v. | : | |
| SECURITY NATIONAL INSURANCE COMPANY | : | NO. 20-2195 |

**MEMORANDUM**

**Padova, J.** **September 22, 2023**

Plaintiffs commenced this insurance coverage litigation against Defendant Security National Insurance Company ("SNIC"), after Argenis Reyes ("Argenis") and Waldy Reyes ("Waldy") were injured in a construction accident and SNIC refused to defend or indemnify the parties that Argenis alleged were responsible for his injuries. Plaintiffs' Second Amended Complaint asserts claims for declaratory judgment, statutory bad faith, breach of the implied duty of good faith and fair dealing, and breach of contract. Before the Court on remand is SNIC's Motion to Dismiss the Second Amended Complaint.[1] For the reasons set forth below, we grant the Motion to Dismiss and dismiss the Second Amended Complaint.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

The facts alleged in the Second Amended Complaint and its attachments are as follows. On June 25, 2019, Argenis and Waldy were seriously injured while performing construction work

[1] On July 27, 2020, SNIC moved to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On August 16, 2021, based on one of the many arguments set forth in SNIC's Motion, we granted the Motion and dismissed this action. Plaintiffs appealed our decision. On August 16, 2023, the United States Court of Appeals for the Third Circuit issued a mandate vacating our dismissal of the Second Amended Complaint and remanding this case for further proceedings. We now address the remaining arguments for dismissal in SNIC's Motion to Dismiss in a manner consistent with the Third Circuit's opinion.

at 4207 Chester Avenue in Philadelphia. (2d Am. Compl. ¶¶ 18, 21-22.) Argenis and Waldy were standing on a third-floor fire escape balcony, discarding construction debris, when the balcony collapsed. (Id. ¶ 20.) Waldy fell one story onto a second-floor landing, suffering two fractured ribs. (Id. ¶ 21.) Argenis "fell . . . to the ground and suffered significant injuries, including . . . permanent paralysis." (Id. ¶ 22.)

4207 Chester Ave., LLC ("Chester Ave.") owns the property at 4207 Chester Avenue where the injuries occurred (the "Property"). (Id. ¶¶ 18, 23.) Chester Ave. had hired Altman Management Company, Inc. ("Altman") to maintain and manage the Property, and Altman had, in turn, enlisted AM Marlin Construction, LLC ("AM Marlin") to repair a ceiling leak at the Property. (Id. ¶ 19, Ex. B at 1-2, Ex. J at 2 of 4.) Argenis was employed by Altman, and Waldy was employed by AM Marlin. (Id. ¶¶ 11, 19, Ex. B at 2.) Both Argenis and Waldy "were working in their capacity as employees of AM Marlin and/or Altman" when the balcony collapsed. (Id. ¶ 19.) Following the accident, Argenis asserted that Chester Ave., AM Marlin, and Waldy were responsible for his bodily injuries and for the loss of consortium damages suffered by his wife, Rosalba Munoz. (Id. ¶ 23.) Waldy asserted that Chester Ave., Altman, and Argenis were responsible for his bodily injuries. (Id. ¶ 23.)

At the time of the accident, AM Marlin was the named insured under a commercial general liability policy issued by SNIC (the "Policy"). (Id. ¶ 26, Ex. F at 4 of 67.) As AM Marlin's employee, Waldy was covered under the Policy "for acts within the scope of [his] employment [with AM Marlin] or while performing duties related to the conduct of [AM Marlin's] business." (Id. ¶ 34.) In addition, both Chester Ave. and Altman are listed in a Schedule contained in an Endorsement to the Policy entitled "Blanket Additional Insureds - Owners, Lessees or Contractors" (the "Endorsement"). (Id. ¶ 27, Ex. G at 2 of 3.) The Endorsement amends the

Policy's "**Section II – Who is An Insured** . . . to include as an insured the person or organization shown in the Schedule, but only to the extent that the person or organization . . . is held liable for [AM Marlin's] acts or omissions arising out of [its] ongoing operations performed for that insured." (Id. Ex. G at 2 of 3.) The Endorsement also states that "any insurance or self-insurance maintained by the . . . additional insured(s) shall be excess of the insurance afforded to [AM Marlin] and shall not contribute to it." (Id. Ex. G at 3 of 3.) Separately, Chester Ave. was the named insured on its own commercial general liability policy issued by Plaintiff Westminster American Insurance Company ("Westminster"). (Id. Ex. I.)

On December 26, 2019, Westminster, on behalf of its insured Chester Ave., sent a letter to SNIC, asserting that AM Marlin had named Chester Ave. as an additional insured under the Endorsement. (Id. Ex. J at 2 of 4.) Westminster therefore tendered Argenis and Waldy's claims against Chester Ave. to SNIC and asked that SNIC "agree to undertake defense and indemnity of this case when [Argenis and Waldy] proceed with litigation." (Id. Ex. J at 3 of 4.) SNIC responded that it would investigate the claims and, on January 15, 2020, SNIC informed Westminster by email that it "ha[d] identified coverage issues which may limit or preclude coverage." (Id. Ex. M at 1.)

On April 3, 2020, Westminster sent a letter to SNIC, requesting a formal response to its December 26, 2019 tender. (Id. ¶ 47, Ex. O.) The letter included a demand package from Argenis and Munoz regarding the "nature of th[e] claims and the extent of the alleged damages." (Id. ¶ 48, Ex. O at 2, Ex. A at 2 of 103.) The demand letter asserted claims against Chester Ave. based on its failure to maintain the fire escape balcony. (Id. Ex. A. at 3 of 103.) On May 6, 2020, SNIC formally denied coverage for Chester Ave., asserting, inter alia, that Chester Ave.'s "coverage [under the Policy] is limited to the extent Chester Ave. is held liable for AM Marlin's acts and/or

omissions arising out of AM Marlin's ongoing operations performed for Chester Ave." (Id. ¶¶ 50, 53, Ex. Q at 4.) Two days after SNIC's formal denial, on May 8, 2020, Westminster asked SNIC to reconsider its coverage position and invited SNIC to attend a pre-suit mediation on May 13, 2020 at 10 AM. (Id. ¶ 59, Ex. S, Ex. U at 2 of 4.) SNIC declined the invitation. (Id. ¶ 59, Ex. T at 1.) After learning that SNIC would not attend the mediation, Argenis and Munoz "demand[ed] the full limits of AM Marlin's Policy." (Id. ¶ 60, Ex. U at 2 of 4.) SNIC denied the demand on May 13, 2020 at 4:58 PM, the evening after the mediation. (Id. ¶ 60, Ex. U at 3 of 4, Ex. V.)

At the May 13, 2020 mediation, which SNIC did not attend, Argenis and Munoz settled and released their claims against Chester Ave. and Waldy. (Id. ¶ 25, Exs. D & E.) They settled their claims against Chester Ave. for $30 million, in the form of (1) a $5.4 million payment from Westminster, and (2) an assignment of Chester Ave.'s right to assert claims against SNIC for failing to defend and indemnify Chester Ave. under the Policy. (Id. ¶ 25, Ex. D at 1, 8.) They settled their claims against Waldy for $5 million, in the form of an assignment of Waldy's right to assert claims against SNIC for failing to defend and indemnify him under the Policy. (Id. ¶ 25, Ex. E at 1, 7.) After the mediation, on May 20, 2020, Waldy contacted SNIC "requesting [that SNIC] acknowledge its coverage obligation to [him] and resolve the potential claims against him by Argenis and Munoz." (Id. ¶ 62, Ex. V.)

On May 21, 2020, SNIC supplemented its prior disclaimer of coverage to Chester Ave. in a letter to Westminster, asserting that the Employer's Liability Exclusion contained in the Policy foreclosed coverage for Argenis and Waldy's claims. (Id. ¶¶ 65, 69, Ex. W at 6-7.) Specifically, SNIC stated that the Employer's Liability Exclusion bars coverage for bodily injury to an employee of "any insured," and, because Waldy was employed by AM Marlin, the named insured,

and Argenis was employed by Altman, an additional insured, the Policy provided no coverage for claims arising from either of their bodily injuries. (Id. ¶ 69, Ex. W at 7, Ex. X.)

B. Procedural History

Following the mediation, Plaintiff Westminster, along with Plaintiffs Argenis and Munoz, as assignees of Chester Ave. and Waldy, filed the instant action against SNIC, asserting eight claims for relief. Count I seeks a declaratory judgment that SNIC was required to defend Chester Ave. and must reimburse Westminster for the costs of its defense and indemnity of Chester Ave. Count II seeks a declaratory judgment that SNIC is required to indemnify Chester Ave. by paying AM Marlin's $1 million policy limit and by paying the balance of Chester Ave.'s settlement with Argenis and Munoz—$24.6 million. Count III seeks a declaratory judgment that SNIC improperly failed to defend Waldy and is required to indemnify Waldy for his $5 million settlement with Argenis and Munoz. Counts IV and V assert statutory bad faith claims pursuant to 42 Pa. Cons. Stat. Ann. § 8371, maintaining, inter alia, that SNIC denied coverage for Chester Ave. and Waldy in bad faith without a reasonable basis. Count VI asserts a claim for breach of the implied duty of good faith and fair dealing by Westminster. Counts VII and VIII assert breach of contract claims by Argenis and Munoz as assignees of Chester Ave. and Waldy.

On July 27, 2020, SNIC moved to dismiss the Second Amended Complaint on the grounds that it had no duty to defend either Chester Ave. or Waldy for the claims against them by Argenis and Munoz. On August 16, 2021, we granted the Motion, concluding only that the Employer's Liability Exclusion foreclosed coverage for Argenis and Munoz's claims. Westminster Am. Ins. Co. v. Sec. Nat'l Ins. Co., 555 F. Supp. 3d 75, 88 (E.D. Pa. 2021). On July 7, 2023, the United States Court of Appeals for the Third Circuit issued a non-precedential opinion vacating our dismissal of the Second Amended Complaint and remanding the case for further proceedings. See

Westminster Am. Ins. Co. v. Sec. Nat'l Ins. Co. (Westminster II), No. 21-2730, 2023 WL 4399217, at *1 (3d Cir. July 7, 2023). The Third Circuit held narrowly that the Employer's Liability Exclusion did not bar coverage for Argenis and Munoz's claims because the Endorsement, which underpins the applicability of the Employer's Liability Exclusion to Argenis, is ambiguous as to whether Argenis was employed by an additional insured under the Policy. Id. at *2-3.

The Third Circuit recognized that the Endorsement contains the following language:

> **Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only to the extent that the person or organization shown in the Schedule is held liable for [AM Marlin's] acts or omissions arising out of [AM Marlin's] ongoing operations performed for that insured.

Id. at *1 (quoting 2d Am. Compl. Ex. G at 2 of 3). It also noted that the Employer's Liability Exclusion provides that "coverage is unavailable for bodily injury to an employee of '*any insured*' arising out of and in the course of either (1) employment by the insured or (2) the performance of duties related to the conduct of the insured's business." Id. (emphasis added) (citing 2d Am. Compl. Ex. X). In addition, the Third Circuit accepted that Argenis's former employer, Altman, is listed in the Schedule contained in the Endorsement. Id. The Third Circuit reasoned, however, that the Endorsement can be interpreted in two ways: (1) Altman, as an organization shown in the Schedule, *is an additional insured*, but the scope of its coverage under the Policy is limited "to the extent that [it] is held liable for [AM Marlin's] acts or omissions arising out of [AM Marlin's] ongoing operations performed for [Altman];" or (2) Altman *is not an additional insured*, unless and until it is "held liable for [AM Marlin's] acts or omissions arising out of [AM Marlin's] ongoing operations performed for [Altman]." (2d Am. Compl. Ex. G at 2 of 3); Westminster II, 2023 WL 4399217, at *2-3.

As it must under Pennsylvania law, the Third Circuit resolved this ambiguity against the drafter of the Policy, SNIC, and concluded that Altman was not an additional insured because it was not "held liable" to Argenis for AM Marlin's conduct. Westminster II, 2023 WL 4399217, at *2-4 ("In Pennsylvania, ambiguities in an insurance policy must be construed against the insurer as the drafter of the agreement." (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900-01 (3d Cir. 1997), as amended (Aug. 28, 1997))). The Third Circuit reasoned that Altman was not, and could not be, "*held liable*" to Argenis for AM Marlin's conduct, because the exclusivity provision of Pennsylvania's workers' compensation statute limited Argenis's recovery from Altman to that provided by the statute and thereby shielded Altman from any further liability to Argenis. Id. at *3-4. Accordingly, the Third Circuit held that the Employer's Liability Exclusion, which only applies to employees of any insured, was inapplicable to Argenis as a former employee of Altman. Id. at *4. Thus, the Third Circuit reversed our holding that the Employer's Liability Exclusion foreclosed Plaintiffs' claims. Id. The remaining arguments for dismissal set forth in SNIC's Motion are now before us on remand.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)). "We accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." Id. (citing W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 91 (3d Cir. 2010)). However, we "are not bound to accept

as true a legal conclusion couched as a factual allegation." Wood v. Moss, 572 U.S. 744, 755 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," which "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (second alteration in original) (first quoting Fed. R. Civ. P. 8(a)(2); then quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must allege "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011) (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). Under this standard, a complaint need not plead all of the facts necessary to prove each element of the plaintiff's claims; it need only allege enough facts to "raise a reasonable expectation that discovery will reveal evidence of [each] necessary element." Martinez v. UPMC Susquehanna, 986 F.3d 261, 266 (3d Cir. 2021) (alteration in original) (quoting Fowler, 578 F.3d at 213). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Geness v. Admin. Off. of Pa. Cts., 974 F.3d 263, 269 (3d Cir. 2020) (quoting Twombly, 550 U.S. at 555).

B. Interpretation of Insurance Contracts

"When interpreting an insurance policy under Pennsylvania law, a court must 'ascertain the intent of the parties as manifested by the language of the written instrument.'" Westminster II, 2023 WL 4399217, at *2 (quoting Am. Auto. Ins. Co. v. Murray, 658 F.3d 311, 320 (3d Cir.

2011)). "Further, a court must construe commonly used words and phrases 'in their natural, plain, and ordinary sense, with [the] court free to consult a dictionary to inform its understanding of terms.'" Id. (alteration in original) (quoting Murray, 658 F.3d at 320-21). "If terms are open to more than one interpretation, then they are deemed ambiguous." Id. (citing Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999)). "In Pennsylvania, ambiguities in an insurance policy must be construed against the insurer as the drafter of the agreement." Id. (citing Reliance Ins. Co., 121 F.3d at 900-01).

## III. DISCUSSION

SNIC seeks dismissal of the Second Amended Complaint in its entirety. While the Second Amended Complaint contains eight Counts for relief, all of those Counts hinge on two issues: (1) whether SNIC had a duty to defend Chester Ave. for the claims against it by Argenis and Munoz; and (2) whether SNIC had a duty to defend Waldy for the claims against him by Argenis and Munoz.[2] Under Pennsylvania law, the duty to defend arises "whenever allegations against the

---

[2] The duty to defend is broader than the duty to indemnify. Nationwide Mut. Ins. Co. v. CPB Int'l, Inc., 562 F.3d 591, 595 n.3 (3d Cir. 2009) (citing Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co., 908 A.2d 888, 896 n.7 (Pa. 2006); Gen. Accident Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997)). "Thus, if [SNIC] [did] not have a duty to defend [Chester Ave. and/or Waldy] . . . , neither does it have the duty to indemnify." Id. (quoting Kvaerner, 908 A.2d at 896 n.7). Further, all of Plaintiffs' claims, including those for bad faith, rely on the premise that Chester Ave. and/or Waldy were entitled to a defense under the Policy for the claims against them arising from the June 25, 2019 accident. See Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 751 n.9 (3d Cir. 1999) (affirming district court which held that, under Pennsylvania law, "bad faith claims cannot survive a determination that there was no duty to defend, because the court's determination that there was no potential coverage means that the insurer had good cause to refuse to defend" (citing Lucker Mfg. v. Home Ins. Co., 23 F.3d 808, 821 n.19 (3d Cir. 1994); Hyde Athletic Indus., Inc. v. Cont'l Cas. Co., 969 F. Supp. 289, 306 (E.D. Pa. 1997))).

Additionally, because the insurer stands in the shoes of its insured, Westminster cannot state a claim for breach of the implied duty of good faith and fair dealing in Count VI where Chester Ave. fails to state its own claim for bad faith. See Puritan Ins. Co. v. Canadian Universal Ins. Co., 775 F.2d 76, 79, 82 (3d Cir. 1985) ("'[A]n excess insurer who has discharged an insured's liability stands in the shoes of the insured and as subrogee may maintain an action for breach of

insured state a claim to which the policy *potentially* applies even if the allegations are 'groundless, false or fraudulent.'" Am. Contract Bridge League v. Nationwide Mut. Fire Ins. Co., 752 F.2d 71, 75 (3d Cir. 1985) (quoting Gedeon v. State Farm Mut. Auto. Ins. Co., 188 A.2d 320 (Pa. 1963)). SNIC moves for dismissal of the Second Amended Complaint on the grounds that it had no duty to defend either Chester Ave. or Waldy for the claims asserted against them by Argenis and Munoz.

A. Chester Ave.

SNIC seeks dismissal of the Second Amended Complaint insofar as it asserts that SNIC had a duty to defend Chester Ave. under the Policy because, it argues, no suit "*to which this insurance applies*" was ever initiated against Chester Ave. (2d Am. Compl. Ex. W at 2 (emphasis added) (quoting the Policy (CG 0001(12/07)), § I, at ¶ 1).) The Policy provides that SNIC "will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury . . . to which this insurance applies" and SNIC "will have the right and duty to defend the insured against any suit seeking those damages." (Id. Ex. W. at 2 (quoting the Policy (CG 0001(12/07)), § I, at ¶ 1) (internal quotation omitted).) The Policy further states that SNIC "will have no duty to defend the insured against any suit seeking damages for bodily injury . . . to which this insurance does not apply." (Id. Ex. W. at 2 (quoting the Policy (CG 0001(12/07)), § I, at ¶ 1) (internal quotation omitted).)

---

the primary carrier's duty to act in good faith,'" but there is "no direct duty of good faith between a primary and excess carrier." (quoting U.S. Fire Ins. Co. v. Royal Ins. Co., 759 F.2d 306, 309 (3d Cir. 1985))). Finally, Munoz's loss of consortium claim is derivative of Argenis's bodily injury claims. See, e.g., Shuker v. Smith & Nephew, PLC, 885 F.3d 760, 777-78 (3d Cir. 2018) ("Loss of consortium . . . is a claim 'derivative' of a spouse's separate claim of injury." (quoting Darr Constr. Co. v. Workmen's Comp. App. Bd., 715 A.2d 1075, 1079-80 (Pa. 1998))); Pahle v. Colebrookdale Twp., 227 F. Supp. 2d 361, 375 (E.D. Pa. 2002) (noting that a wife's claim for loss of consortium "is derivative, i.e. dependant [sic] on the success of the underlying claim asserted by her injured husband" (citations omitted)). Therefore, where SNIC had no duty to defend Chester Ave. or Waldy against Argenis's claims, it had no duty to defend against Munoz's derivative claim.

SNIC asserts that the Policy did not apply to Argenis and Munoz's claims against Chester Ave. because those claims did not seek to hold Chester Ave. liable for AM Marlin's acts or omissions. Like Altman, Chester Ave. is listed in the Schedule contained in the Endorsement entitled "Blanket Additional Insureds - Owners, Lessees or Contractors." (Id. Ex. G at 2 of 3.) Pursuant to the Third Circuit's holding, the Endorsement therefore provides that either (1) Chester Ave., as an entity listed in the Schedule, *is an additional insured*, but the scope of its coverage under the Policy is limited "to the extent that [it] is held liable for [AM Marlin's] acts or omissions arising out of [AM Marlin's] ongoing operations performed for [Chester Ave.];" or (2) Chester Ave. *is not an additional insured*, unless and until it is "held liable for [AM Marlin's] acts or omissions arising out of [AM Marlin's] ongoing operations performed for [Chester Ave.]" (Id. Ex. G at 2 of 3); Westminster II, 2023 WL 4399217, at *2-3. Regardless of which interpretation we choose, the Endorsement unambiguously provides that Chester Ave. must be "held liable for" AM Marlin's conduct in order to receive any amount of coverage under the Policy.[3] (2d Am. Compl. Ex. G at 2 of 3); see, e.g., Westminster II, 2023 WL 4399217, at *3-4, *3 n.17 (discussing the "held liable" clause and stating that "one is held 'liable' when 'obligated according to law or equity'" (citing Liable, Merriam Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/liable (last visited Jun. 25, 2023))); Ne. Utils. Serv. Co. v. St. Paul Fire & Marine Ins. Co., Civ. A. No. 08-1673, 2012 WL 2872810, at *4, 8 (D. Conn. July 12, 2012) (interpreting a similar policy endorsement, finding it unambiguous, and concluding that "an

---

[3] Plaintiffs rely upon Philadelphia Electric Co. v. Nationwide Mutual Insurance Co., 721 F. Supp. 740 (E.D. Pa. 1989), to argue that Chester Ave. need not be held vicariously liable for AM Marlin's conduct to receive coverage under the Policy. The policy at issue there, however, unlike the one in this case, did not require that the additional insured be "held liable for [the named insured's] acts or omissions." (2d Am. Compl. Ex. G at 2 of 3.) It merely "added . . . Additional Insureds for any work performed by [the named insured] on their behalf." Phila. Elec. Co., 721 F. Supp. at 742. Plaintiffs' reliance on Philadelphia Electric Co. is therefore misplaced.

additional insured is covered only if . . . such additional insured is held liable for [the named insured]'s acts or omissions"); Sun Co. v. Brown & Root Braun, Inc., Civ. A. No. 98-5817, 2001 WL 8864, at *3, 7 (E.D. Pa. Jan. 4, 2001) (interpreting a similar policy endorsement, finding it "plain and unambiguous," and concluding that it only provided coverage to additional insureds "for the vicarious liability that they may have had for the [named insured]'s acts or omissions").

SNIC argues that the Policy did not apply to Argenis and Munoz's claims against Chester Ave. because those claims were brought against Chester Ave. "for its *own* liability, not for AM Marlin's conduct." (Def.'s Mot. at 24.) Plaintiffs counter that their "allegations provide sufficient context for SNIC's coverage obligation to Chester Ave." because Chester Ave.'s "liability *arose out of* A.M. Marlin's ongoing operations performed for Chester Ave." (Pls.' Resp. at 21.) In this counterargument, and throughout the Second Amended Complaint, Plaintiffs appear to endorse a partial reading of the "held liable" clause, which omits the requirement that Chester Ave. be "*held liable for [AM Marlin's] acts or omissions*" and emphasizes only that Chester Ave.'s liability "aris[es] out of [AM Marlin's] ongoing operations performed for [Chester Ave.]" (2d Am. Compl. Ex. G at 2 of 3 (emphasis added); see, e.g., id. ¶¶ 29, 71, 77, 82, 111.)

In the demand letter, which Argenis and Munoz sent to Chester Ave. and which Chester Ave. forwarded to SNIC in April of 2020, Argenis and Munoz asserted claims against Chester Ave. based on its failure to maintain the fire escape balcony. (Id. Ex. A. at 3 of 103, Ex. O at 2.) Specifically, the demand letter alleged that the balcony was "rusted and barely secured to the building itself," and had "remained in that condition for a number of years." (Id. Ex. A. at 3 of 103.) The Second Amended Complaint does not allege that AM Marlin had any responsibility for maintaining the fire escape balcony. In addition, the Second Amended Complaint alleges that Argenis and Munoz provided SNIC with their mediation statement (id. ¶ 58), but neither that

statement nor the demand letter suggested, much less alleged facts to show, that Argenis and Munoz sought to hold Chester Ave. "liable for [AM Marlin's] acts or omissions."[4] (Id. Ex. G at 2 of 3.) Rather, the Second Amended Complaint only supports the inference that Argenis and Munoz sought to hold Chester Ave. liable for its own "recklessness, or conscious indifference to the welfare of others" in failing to maintain the fire escape balcony. (Id. Ex. A. at 3 of 103.)

For these reasons, reading the Second Amended Complaint in the light most favorable to Plaintiffs, we conclude that it fails to allege sufficient facts to support the reasonable inference that the claims against Chester Ave. by Argenis and Munoz were potentially covered under the Policy. We further conclude that the Second Amended Complaint fails to support a reasonable inference that SNIC had a duty to defend Chester Ave. against those claims.[5] Accordingly, we grant the Motion to Dismiss with respect to this argument and dismiss Counts I, II, IV, VI, and VII of the Second Amended Complaint, in which Plaintiffs assert that SNIC (1) had a duty to defend and indemnify Chester Ave. for claims arising from Argenis and Munoz's injuries, (2) acted in bad

[4] An expert report attached to the demand letter identified one act or omission by AM Marlin. There, the expert opined that "AM [Marlin] was also involved with the construction work . . . and also failed to ensure the construction site's safety by allowing [Waldy and Argenis] to access the 3rd floor fire escape balcony." (2d Am. Compl. Ex. A. at 79-80 of 103.) While this assertion suggests that AM Marlin could also be liable for the June 25, 2019 accident, it does not suggest that Argenis and Munoz sought to hold *Chester Ave.* liable for that omission by AM Marlin. That lone assertion, therefore, does nothing to change our analysis.

[5] We considered the demand letter, its attachments, and Argenis and Munoz's mediation statement in reaching this conclusion because Plaintiffs attached all of those documents to the Second Amended Complaint. See Mayer, 605 F.3d at 230 ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." (citation omitted)).

faith by denying such coverage, (3) breached an implied duty of good faith to Westminster by denying such coverage, and (4) breached the Policy by denying such coverage.[6]

B. Waldy

SNIC seeks dismissal of the Second Amended Complaint insofar as it asserts that SNIC had a duty to defend Waldy under the Policy because, it argues, no "suit" relating to the June 25, 2019 accident was ever initiated against Waldy. The Policy defines "suit" as "a civil proceeding in which damages because of bodily injury . . . are alleged," including any "alternative dispute resolution proceeding . . . to which the insured submits with [SNIC's] consent." (Mot. at 16 (quoting the Policy (CG 0001(12/07)), § V, at ¶ 18) (internal quotation omitted).) Black's Law Dictionary defines an "alternative dispute resolution" as "[a]ny procedure for settling a dispute by means other than litigation, as by arbitration or mediation." Alternative Dispute Resolution, Black's Law Dictionary (11th ed. 2019). Plaintiffs maintain that the Second Amended Complaint sufficiently alleges that there was a coverage-triggering "suit" against Waldy because the claims against him were addressed in an alternative dispute resolution—the mediation—and SNIC waived its right to consent to the mediation by disclaiming coverage for Waldy prior to that proceeding.

In advancing this argument, Plaintiffs cite to Fisher v. USAA Casualty Insurance Co., 973 F.2d 1103 (3d Cir. 1992), in which the Third Circuit discussed an insurer's right to consent to a settlement after disclaiming coverage. There, the Third Circuit determined that "an insurer is not

[6] Counts I, II, IV, VI, and VII also assert that SNIC (1) had a duty to defend and indemnify Chester Ave. for Waldy's bodily injury claim, (2) acted in bad faith by denying such coverage, (3) breached an implied duty of good faith to Westminster by denying such coverage, and (4) breached the Policy by denying such coverage. Plaintiffs, however, have repeatedly stated in their briefing that "Waldy's personal injury claim is not at issue in the Second Amended Complaint." (See, e.g., Pls.' Supp. Mem. (Docket No. 72) at 2.) We therefore conclude that Counts I, II, IV, VI, and VII are withdrawn insofar as they assert claims relating to Waldy's bodily injuries and we dismiss them on that basis. Nevertheless, if those claims were not withdrawn, we would dismiss them based on the Employer's Liability Exclusion, which barred coverage for Waldy's bodily injuries.

free to [first] deny coverage under the policy terms and later deny coverage on the ground that the insured failed to obtain its consent to settle." Id. at 1107. The Third Circuit reasoned that it "'would [obviously be] an unavailing effort for the [insured] to [seek] the [insurer's] consent for the settlement when he had already been advised by the [insurer] that it considered his policy coverage to be inapplicable,' and therefore no such consent is required in such a case." Id. (alterations in original) (quoting Kolbe v. Aegis Ins. Co., 537 A.2d 7, 8 (Pa. Super. Ct. 1987)).

Relying on Fisher, Plaintiffs argue that SNIC waived its right to consent to the May 13, 2020 mediation when it disclaimed coverage for Waldy prior to that date. However, the Second Amended Complaint does not allege that SNIC was notified of any potential claim against Waldy or asked to provide coverage for any claim against him, until May 12, 2020, the day before the 10 AM mediation, when Argenis sent an email demand to SNIC asking that it "tender [its] policy limit . . . of $1 million on behalf of [its] insureds AM [Marlin] and Waldy Reyes, in settlement of [Argenis and Munoz's] claims." (2d Am. Compl. Ex. U at 2 of 4.) The May 12, 2020 email, however, provided no factual basis for any "claim" against Waldy. (See id.) Further, according to the Second Amended Complaint and its attachments, SNIC did not decline that May 12, 2020 demand until May 13, 2020, at 4:58 PM—after the 10 AM mediation. (Id. Ex. U at 3 of 4.) Accordingly, the Second Amended Complaint does not plausibly allege that SNIC denied coverage for Waldy before the mediation.

Instead, the Second Amended Complaint alleges only that Waldy, through his counsel, contacted SNIC on May 20, 2020, a week *after* the May 13, 2020 mediation, requesting that SNIC "acknowledge its coverage obligation to Waldy and resolve the potential claims against him by Argenis and Munoz." (Id. ¶ 62, Ex. V.) There is no allegation that Waldy contacted SNIC at any time before that date. Moreover, similar to the May 12, 2020 demand email from Argenis, the

May 20, 2020 letter from Waldy provided no factual basis for the "potential claims" against Waldy. Further, the Second Amended Complaint alleges that SNIC "never responded" to the May 20, 2020 letter. (Id. ¶ 62.) Notably, in stark contrast to the allegations about any claims against Waldy, the Second Amended Complaint clearly alleges that on December 26, 2019, Westminster tendered the claims against *Chester Ave.* to SNIC. (Id. Ex. J at 2-3 of 4.) It further alleges that SNIC formally denied coverage for Chester Ave., *and only Chester Ave.*, on May 6, 2020. (Id. Ex. Q at 5). SNIC's disclamation of coverage on May 6, 2020 made no mention of its duty to defend or indemnify Waldy. (See id. Exs. M & Q.) Accordingly, reading the Second Amended Complaint in the light most favorable to Plaintiffs, it simply does not support the inference that SNIC disclaimed coverage for Waldy prior to the mediation because it does not allege that Waldy tendered any claim against him to SNIC until after that date. See NVR, Inc. v. Motorists Mut. Ins. Co., 371 F. Supp. 3d 233, 243 (W.D. Pa. 2019) ("[O]rdinarily, an insurer's duty to defend will not be triggered unless and until the insured requests a defense." (citing Gen. Refractories Co. v. First State Ins. Co., 94 F. Supp. 3d 649, 663 (E.D. Pa. 2015))).

Under these circumstances, we conclude that Fischer is inapplicable and that the Second Amended Complaint fails to allege facts to support a reasonable inference that SNIC waived its right to consent to Waldy's participation in the May 13, 2020 mediation. See Fisher, 973 F.2d at 1107. Moreover, the Second Amended Complaint does not allege facts that support an inference that SNIC *actually* consented to Waldy's participation in the mediation. We therefore conclude that its allegations do not support a reasonable inference that the mediation meets the definition of "suit" set forth in the Policy, i.e., an "alternative dispute resolution proceeding . . . to which the

insured submits with [SNIC's] consent."[7] (Mot. at 16 (quoting the Policy (CG 0001(12/07)), § V, at ¶ 18).) Because the Policy unambiguously provides that SNIC's duty to defend arises from a "suit," and the Second Amended Complaint fails to sufficiently allege that Waldy was party to a "suit," we can only conclude that the Second Amended Complaint fails to allege sufficient facts to support the reasonable inference that SNIC had a duty to defend Waldy for the claims asserted against him by Argenis and Munoz. Accordingly, we grant SNIC's Motion to Dismiss with respect to this argument and dismiss Counts III, V, and VIII of the Second Amended Complaint, which assert that SNIC (1) had a duty to defend and indemnify Waldy for claims arising from Argenis and Munoz's injuries, (2) acted in bad faith by denying such coverage, and (3) breached the Policy by denying such coverage.

## IV. CONCLUSION

For the foregoing reasons, SNIC's Motion to Dismiss is granted and the Second Amended Complaint is dismissed.[8] An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

John R. Padova, J.

[7] Plaintiffs also argue, in the alternative, that we should estop SNIC from raising the argument that coverage for Waldy is barred by the definition of "suit" because SNIC failed to raise that argument before the mediation. We cannot, however, estop SNIC from "asserting coverage defenses which were not stated pre-mediation" where Waldy did not tender the claims against him to SNIC until after that date. (Pls.' Resp. at 43.)

[8] "[I]n non-civil rights cases, district courts have no obligation to offer leave to amend before dismissing a complaint unless the plaintiff properly requests it." Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 210 (3d Cir. 2019) (quotation omitted). Here, Plaintiffs have neither requested leave to amend "nor suggested the existence of any allegations not contained in the [Second] Amended Complaint," despite their voluminous briefing and Oral Argument on SNIC's Motion to Dismiss. Haberle v. Troxell, Civ. A. No. 15 -2804, 2016 WL 1241939, at *1 n.1 (E.D. Pa. Mar. 30, 2016). Therefore, while we need not address the issue, we find that any further amendment of the *Second Amended* Complaint would be futile.